[Civil No. 2502.  Filed January 7, 1926.]

[242 Pac. 658.]

ALABAM'S FREIGHT COMPANY, a Corporation, Appellant, v. GEORGE W. P. HUNT, Governor of the State of Arizona, VERNON WRIGHT, Treasurer of the State of Arizona, and WAYNE HUBB, Auditor of the State of Arizona, Appellees.

1. CONSTITUTIONAL LAW—MASTER AND SERVANT—COMPENSATION ACT NOT INVALID BECAUSE OF PROVISION TO BECOME EFFECTIVE ON ADOPTION OF CONSTITUTIONAL AMENDMENT AUTHORIZING IT.— Workmen's Compensation Act *held* not unconstitutional because of provision to become effective on adoption of constitutional amendment authorizing it, requiring election of remedies in advance of injury; validity being tested by Constitution as it is when law takes effect, not when it was passed.

2. STATUTES — EFFECTIVE DATE OF WORKMEN'S COMPENSATION ACT NOT POSTPONED UNTIL NINETY DAYS AFTER ADOPTION OF CONSTITUTIONAL AMENDMENT, SO AS TO ALLOW REFERENDUM.—Constitution, article 4, section 1, does not postpone date on which Workmen's Compensation Act takes effect until 90 days after adoption of constitutional amendment authorizing provision for election of remedies before injury, so as to allow opportunity for referendum, whether or not emergency clause was void; Constitution allowing referendum petition to be filed only within 90 days after close of session of legislature enacting law, not within 90 days after it becomes effective.

3. CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION ACT HELD NOT UNCONSTITUTIONAL AS ESTABLISHING "COURT,"—Industrial Commission, created by Workmen's Compensation Act, is not a "court" to which administrative powers are delegated by section 12, in violation of Constitution, article 3; a "court" being defined as a tribunal established for the public administration of justice.

4. CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION ACT NOT UNCONSTITUTIONAL AS DELEGATING "JUDICIAL" POWERS TO COMMISSION.—Workmen's Compensation Act *held* not obnoxious to Constitution, article 6, section 1, as delegating "judicial" powers to commission established thereby, in view of right of review giving courts the exercise of discretion; deliberation, thought, and judgment not being exclusively judicial functions.

5. CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION ACT NOT INVALID AS DENYING DUE PROCESS AND EQUAL PROTECTION BY FAILURE TO LIMIT OCCUPATIONS TO THOSE INHERENTLY HAZARDOUS.—Workmen's Compensation Law *held* not in violation of Constitution of the United States, Amendment 14, as taking property without due process, and denying equal protection of law by compelling employers to provide compensation for any employee killed or injured "by any accident arising out of and in the course of his employment," without limiting occupations covered to those inherently hazardous.

6. MASTER AND SERVANT—PROVISIONS OF COMPENSATION ACT FOR ELECTION OF REMEDIES HELD INVALID.—Workmen's Compensation Act, sections 60, 65, limiting right of election to accept act or bring actions authorized by Constitution, article 18, sections 7, 8, to employees in specified occupations, *held* invalid, as in conflict with status of action of negligence as common-law one not created by Constitution, though modified by Constitution, article 18, sections 4, 5, having been changed by adoption of section 6, prohibiting abrogation of such right of action.

7. STATUTES—WHOLE STATUTE NOT INVALIDATED BY INVALIDITY OF SEVERABLE PARTS.—If valid parts of statute are effective and enforceable of themselves, and invalid portion was not consideration and inducement of whole act, and it may be presumed that legislature would have passed one without the other, constitutional part will stand, and remainder be rejected.

8. STATUTES—WORKMEN'S COMPENSATION ACT NOT INVALID IN ENTIRETY BECAUSE OF LIMITATION OF RIGHT TO ELECT BETWEEN

6. Constitutionality of Workmen's Compensation Act giving choice of remedies exclusively to either employer or employee, see note in 6 A. L. R. 1562.

7. See 6 R. C. L. 123.

REMEDIES.—Workmen's Compensation Act *held* not void in entirety because of sections 60, 65, limiting right of election to accept act or sue for damages to employees in specified occupations.

See (1) 12 C. J., p. 742, n. 63; Workmen's Compensation Acts, C. J., p. 15, n. 4 New. (2) 36 Cyc., p. 942, n. 24. (3) Workmen's Compensation Acts, C. J., p. 28, n. 19. (4) Workmen's Compensation Acts, C. J., p. 28, n. 18. (5) Workmen's Compensation Acts, C. J., p. 16, n. 24; p. 24, n. 76. (6) Workmen's Compensation Acts, C. J., p. 23, n. 65. (7) 36 Cyc., p. 976, n. 27. (8) 36 Cyc., p. 983, n. 63.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Dudley W. Windes, Judge. Affirmed.

Messrs. Barnum & Flanigan, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Earl Anderson, Mr. Frank J. Duffy and Mr. A. R. Lynch, Assistant Attorneys General, and Mr. H. A. Elliott, for Appellees.

LOCKWOOD, J.—This is an action to test the validity of House Bill No. 227, Session Laws of 1925, generally known as the Workmen's Compensation Act. It was begun by a complaint filed in the superior court of Maricopa county, which raised every possible constitutional point that could be imagined. A demurrer to the complaint was filed and was sustained by the trial court, and, plaintiff electing to stand on the complaint, judgment went against it, and the matter is before us on the record.

There were some twenty-four objections to the act set up in the complaint, but counsel for plaintiff stated frankly on oral argument he was convinced on close examination the large majority of these were trivial, and that he intended to present only those points which he believed possessed merit. In passing, we desire to express our approval of this attitude. It

relieves the appellate court of much unnecessary labor, and enables us to devote our whole time to the vital questions, impressed by the belief that, since counsel has been frank and honest enough to abandon the trivial issues, the remaining ones which he does urge are worthy of the most serious consideration.

There remain five specifications of alleged unconstitutionality, which we will consider in the order which seems most advisable. The first is that since, at the time of the passage of the act, the legislature had no power under the Constitution to require an election of remedies in advance of injury, it could not then enact a valid law containing such a provision, which should become effective upon a future amendment of the Constitution permitting it. Counsel admits that the taking effect of a law may be made to depend on a future contingency, but contends that the act must have been constitutional when passed. The case most directly in point is that of *State* v. *Hecker,* 109 Or. 520, 221 Pac. 808. In that state the Constitution had abolished the death penalty in 1914. In the spring of 1920 the legislature ordered submitted to the voters a constitutional amendment reestablishing it, and enacted a law providing for the death penalty and the method of carrying it into effect. This act, under the provisions of the Oregon Constitution became a law on April 17th, but its operative effect was expressly suspended by its terms until the adoption of the constitutional amendment. This last was approved by the people in May, and became part of the Constitution on June 18th. The court, discussing the proposition presented here by plaintiff, said:

"Chapter 20 was enacted for the sole purpose of prescribing a procedure which should be and could be available only upon the amendment of the Constitu-

tion.  The purpose was to make chapter 20 operative contemporaneously with, but not before the amendment of the Constitution.  It is our view that chapter 20 is constitutional; and this view, although opposed by the holding in *Etchison Drilling Co.* v. *Flournoy,* 131 La. 442, 59 South. 867, is supported by *Pratt* v. *Allen,* 13 Conn. 119; *Galveston, B. & C. N.-G. R. W. Co.* v. *Gross,* 47 Tex. 428, 436, and *State ex rel.* v. *Kirkley,* 29 Md. 85, 104.  See, also, 8 Cyc. 770; 12 C. J. 742.''

See, also, *Boyd* v. *Olcott,* 102 Or. 327, 202 Pac. 431.

In *Druggan* v. *Anderson,* 269 U. S. 36, 70 L. Ed. 151, 46 Sup. Ct. Rep. 14, the court says:

''Indeed, it would be going far to say that while the *fate of the amendment was uncertain* Congress could not have passed a law in aid of it, conditioned upon the ratification taking place.''

We are of the opinion that the legislature may pass an act to take effect only upon the adoption of a constitutional amendment authorizing it, and that its constitutionality is to be tested by the Constitution as it is at the time the law takes effect, and not as when it was passed.

The next objection is that the emergency clause attached to the bill was void for various reasons, and that the act, therefore, cannot take effect until 90 days after the adoption of the amendment, so as to allow opportunity for a referendum.  Article 4, section 1, of the Constitution, reads, in part, as follows:

''(4) . . . All petitions submitted under the power of the referendum shall be known as referendum petitions, and shall be filed with the Secretary of State not more than 90 days after the final adjournment of the session of the Legislature which shall have passed the measure to which the referendum is applied. . . . ''

Admitting, without deciding, that the emergency clause was void, the Constitution allows a referendum

petition to be filed only within 90 days *after the close of the session of the legislature enacting the measure,* and not within 90 days after the law becomes effective. The express purpose of the referendum is to suspend or annul a law which has not gone into effect, and not to invalidate one already operative, and, after a law has become effective, no referendum is provided for. On November 3d, when by its terms the act took effect, the period allowed by the Constitution for a referendum had long since passed. There is no merit in this objection.

We next consider the point that executive and judicial powers are united in the commission established by the act, and that there is an unlawful delegation of judicial power to it, contrary to article 3, and article 6, section 1 of the state Constitution. These read, respectively, as follows:

"The powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive and the judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

"Section 1. The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such courts inferior to the superior courts as may be provided by law."

That the commission has many and great administrative powers is obvious. It makes classifications of employment for fund purposes, determines hazards, fixes rates of premium, determines dependency. In fact, the whole purpose of its existence is the administration of one of the most important laws of the state.

It is then urged by counsel for plaintiff that we are between the horns of a dilemma. If we hold that the commission is a court within article 6, section 1, it has administrative duties in violation of article 3.

If, on the other hand, we decide that it is not a court, it has granted to it many judicial powers, and the law is then obnoxious to article 6, section 1, as vesting judicial powers in a body other than a court.

There can be no doubt that, if such are our only alternatives, the point is well taken. If the commission is a court, or if it has imposed on it powers which can be held only by a court, the act must necessarily be unconstitutional. Let us, however, see if either of these contentions is true.

The best definition of the word "court" which has been given is:

"A tribunal established for the public administration of justice." *Butts* v. *Armor,* 164 Pa. 73, 26 L. R. A. 213, 30 Atl. 357; *Dixon* v. *People,* 53 Colo. 527, 127 Pac. 930.

—and the public administration of justice has from time immemorial been its sole duty. In the light of this definition let us examine the powers and duties of the commission established by the act. Section 12 thereof contains all the general powers granted, and provides that—

"It shall also be the duty of the commission, and it shall have full power, jurisdiction and authority:

"To administer and enforce all laws for the protection of life, health, safety and welfare of employees. . . .

"To investigate, ascertain and determine such reasonable classification of persons . . . as shall be necessary to carry out the purposes of this act.

" . . . To promote the voluntary arbitration . . . of disputes between employers and employees.

"To establish and conduct free employment agencies. . . .

"To collect . . . statistical and other information relating to employees, employers. . . .

"Upon petition . . . that any place of employment is not safe . . . to make such investigations. . . . "

To hold, in view of the foregoing powers and duties, it was the intent of the legislature to establish a "court," would be the height of absurdity. The act is not obnoxious to article 3 of the Constitution.

But, it is said, conceding that the commission is not a court, it has delegated to it many judicial powers which, under article 6, section 1, can be exercised only by a court. What is judicial power within the meaning of such a constitutional provision? It is not enough to make a function judicial that it requires discretion, deliberation, thought and judgment. As to what is judicial and what is not seems to be better indicated by the nature of the thing than its definition. In *State ex rel. Attorney General* v. *Hawkins,* 44 Ohio St. 98, 5 N. E. 228, the court says:

"What is judicial power cannot be brought within ring fence of a definition. It is, undoubtedly, power to hear and determine; but this is not peculiar to the judicial office. Many of the acts of administrative and executive officers involve the exercise of the same power."

The authority to ascertain facts and apply the law to the facts when ascertained appertains as well to the other departments of the government as to the judiciary. *State* v. *Harmon,* 31 Ohio St. 250.

In discussing this identical point in *Borgnis* v. *Falk Co.,* 147 Wis. 327, 37 L. R. A. (N. S.) 489, 501, 502, 133 N. W. 209, the Supreme Court of Wisconsin said:

"We do not consider the Industrial Commission a court, nor do we construe the act as vesting in the commission judicial powers within the meaning of the Constitution. It is an administrative body or arm of the government, which in the course of its administration of a law, is empowered to ascertain some questions of fact and apply the existing law thereto, and in so doing acts *quasi* judicially, but it is not thereby vested with judicial power in the constitutional sense.

"There are many such administrative bodies or commissions, and with the increasing complexity of modern government they seem likely to increase rather than diminish. Examples may be easily thought of. Town boards, boards of health, boards of review, boards of equalization, Railroad Rate Commissions, and Public Utility Commissions, all come within this class. They perform very important duties in our scheme of government, but they are not legislatures or courts. The legislative branch of the government by statute determines the rights, duties and liabilities of persons and corporations under certain conditions of fact, and varying as the facts and conditions change. Manifestly the Legislature cannot remain in session and pass a new act upon every change of conditions, but it may and does commit to an administrative board the duty of ascertaining when the facts exist which call into activity certain provisions of the law, and when conditions have changed so as to call into activity other provisions. The law is made by the Legislature; the facts upon which its operation is dependent are ascertained by the administrative board. While acting within the scope of its duty, or its jurisdiction, as it is sometimes called, such a board may lawfully be endowed with very broad powers, and its conclusions may be given great dignity and force, so that courts may not reverse them unless the proof be clear and satisfactory that they are wrong. [Citing cases.] Not only this, but many such boards are created whose decisions of fact honestly made within their jurisdiction are not subject to review in any proceeding. [Citing cases.] It is important to notice the limitation contained in the last sentence: The decision of such a board may be made conclusive when the board is acting within its jurisdiction, not otherwise. Hence the question of its jurisdiction is one always open to the courts for review. It cannot itself conclusively settle that question, and thus endow itself with power. If no appeal from its conclusions be provided, the question whether it has acted within or exceeded its jurisdiction is always open to the examination and decision of the proper court by writ of *certiorari*. The instances where the question of jurisdiction of such bodies has been examined and

decided in *certiorari* actions are so numerous that it seems unnecessary to cite them. In such cases it is considered that clear violations of law in reaching the result reached by the board, such as acting without evidence when evidence is required, or making a decision contrary to all the evidence, constitute jurisdictional error, and will justify reversal of the board's action, as well as the failure to take the proper steps to acquire jurisdiction at the beginning of the proceeding. [Citing cases.]

"Thus, in the case before us, the jurisdiction of the Industrial Commission to entertain any claim for compensation under the act rests upon two facts which must exist, viz.: (1) That both employer and employee have elected to come under the act; and (2) that the injury was received in service growing out of or incidental to the employment, as the result of accident, and not of wilful misconduct.

"The Industrial Commission must, of course, decide these questions in any case where they are raised, but it cannot decide them conclusively, for they are jurisdictional questions on which its right to act at all depends. They must be open to review in some court of competent jurisdiction; otherwise the parties. would be denied due process of law. . . . ''

It is true that in Wisconsin both employer and employee must have elected to come under the act, but many states have reached the same conclusion where the act was compulsory. *Grand Trunk Western Ry. Co.* v. *Industrial Com.*, 291 Ill. 167, 125 N. E. 748; *Solvuca* v. *Ryan & Reilly Co.*, 131 Md. 265, 101 Atl. 710; *Utah Fuel Co.* v. *Industrial Com.*, 57 Utah, 246, 194 Pac. 122.

We think the reasoning in the Borgnis case applies equally well to compulsory acts. The vital point is well expressed in the following language:

"The decision of such a board may be made conclusive when the board is acting within its jurisdiction, not otherwise. Hence the question of its jurisdiction is one always open to the courts for review. It cannot of itself conclusively settle that question,

and thus endow itself with power. . . . The Industrial Commission must, of course, decide these questions in any case where they are raised, but it cannot decide them conclusively, for they are jurisdictional questions on which its right to act at all depends. They must be open to review in some court of competent jurisdiction; otherwise the parties would be denied due process of law."

The question of whether or not a compulsory law is constitutional is entirely another matter, but assuming, for the purpose of considering this one point only, that it is, so long as all questions involving jurisdiction are open to review in a proper court, there is not, within the reasoning of the Borgnis case, an improper delegation of judicial power. And our statute goes far beyond the Wisconsin act (Laws 1911, c. 50) in giving the courts a right of review. Any order of the commission, except a final award, may be reviewed in the superior court for both its lawfulness and reasonableness, while the Supreme Court, on an award, may examine the jurisdiction of the commission and the sufficiency of the findings, and may even, if it deems proper, review the evidence. We conclude there is no improper delegation of judicial power.

This disposes of the objections to the enactment of the law and the machinery provided for its administration. We come now to the question of the validity of the fundamental principles underlying it, and the constitutional amendment on which it is based. Two issues are raised. The first is that an act which compels employers to provide compensation for any employee who is killed or injured "by any accident arising out of and in the course of his employment" is unconstitutional as taking property without due process of law, and denying equal protection of the law, within the 14th Amendment of the federal Constitution. Briefly stated, the argument is that the Supreme Court of the United States

upheld the Employers' Liability Law in *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400, 6 A. L. R. 1537, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553, expressly on the ground that the occupations covered thereby were obviously of a class which contained some unusual and distinctive hazards, and that by implication an act like the one in question, which includes practically all occupations known to man, with two exceptions, and makes the basis of limitation the number of employees, would be disapproved as unconstitutional. Had this been the last expression of that court, the contention would have much ground for support, but the whole question was reconsidered in *Ward* v. *Krinsky,* 259 U. S. 503, 28 A. L. R. 1207, 66 L. Ed. 1033, 42 Sup. Ct. Rep. 529. The New York statute, which originally, like ours, provided for compensation only in certain specified "extrahazardous" employments, was amended to cover in addition:

"All other employments not hereinbefore enumerated carried on by any person, firm or corporation in which there are engaged or employed four or more workmen or operatives regularly, in the same business . . . except farm laborers and domestic servants." Consol. Laws, c. 67, § 2, group 45, as added by Laws 1918, c. 634.

The court, in its opinion, summarizes the argument against the law, and the fallacy thereof, so completely that we cannot do better than quote therefrom:

"Under the due process of law clause, plaintiff in error contends that the validity of compulsory Workmen's Compensation Acts depends upon the inherently hazardous character of the occupations covered; that a legislative declaration that a certain employment is hazardous is not conclusive; and that to impose upon the employer, as is said to be done in this instance, a liability to make compensation to any employee out of hundreds whose occupations are nonhazardous, because four or more workmen or operatives may

happen to be regularly employed in the same business, or in or about the same establishment, although not brought into contact with the injured employee, and where, to use the words of counsel, 'his injury was the consequence not of any hazard inherent in his employment, but of gross personal negligence, or incredible folly that would have brought injury to any person in any occupation whatever,' is so altogether unreasonable as to be wanting in due process. . . .

"A sufficient vindication of compulsory Workmen's Compensation and Employers' Liability Acts, as it has seemed to this court, is found in the public interest of the state in the lives and personal security of those who are under the protection of its laws; from which it follows that, when men are employed in hazardous occupations for gain, it is within the power of the state to charge the pecuniary losses arising from disabling or fatal personal injury, to some extent, at least, against the industry, after the manner of casualty insurance, instead of allowing them to rest where they may happen to fall—upon the particular injured employees or their dependents; and to this end to require that the employer—he who organizes and directs the enterprise, hires the workmen, fixes the wages, sets a price upon the product, receives the gross proceeds, pays the costs and the losses, and takes for his reward the net profits, if any—shall make or secure to be made such compensation as reasonably may be prescribed, to be paid in the event of the injury or death of one of those employed, instead of permitting the entire risk to be assumed by the individuals immediately affected.  In general, as in the New York law, provisions for compulsory compensation are made to apply only to those employed in hazardous occupations, where it may be contemplated by both parties in advance that sooner or later some of those employed probably will sustain accidental injury in the course of the employment, but where nobody can know in advance which particular employees, or how many, will be the victims, or how serious will be the injuries. [Citing cases.] . . .

"The contention that, by this construction, second group 45 has been extended beyond the limit allowable consistently with due process of law, and 'has been applied in this case to an employment with no inherent hazard whatever,' rests upon an assumption of fact disproved by Krinsky's experience. Were it not so, the argument is self-destructive. The statute requires the employer to make or secure compensation for the disability or death of an employee only where it results from accidental personal injury *arising out of and in the course of the employment.* [Italics ours.] Where the employment is entirely free from inherent hazard to the employee, the statute imposes no responsibility upon the employer, hence cannot substantially interfere with his liberty or property, with or without 'due process of law.' *Arizona Employers' Liability Cases (Arizona Copper Co.* v. *Hammer*), 250 U. S. 400, 429, 6 A. L. R. 1537, 63 L. Ed. 1058, 1070, 39 Sup. Ct. Rep. 553.

"Reducing the argument by omitting the extravagant statement that so plainly leads to absurdity, it may be outlined thus: That Krinsky's occupation was no more hazardous than that of millions of residents of the metropolitan district who daily make use of the subways and elevated railways in going to and from their work; that there had been no such accident among plaintiff in error's employees in twenty years of operation; and that it is unreasonably and unnecessarily burdensome to require the employer to either maintain compensation insurance at heavy annual premiums, or deposit securities with the state to guarantee payment of compensation benefits, where the probability of injury is so slight. . . .

"The fallacy of the argument for holding it arbitrary and unreasonable to impose upon the employer the burden of making compensation in employments where injury is improbable and difficult to be foreseen should be fairly apparent when it is pointed out that, in the absence of the statute, not a part but the entire loss consequent upon a disabling or fatal injury arising out of and in the course of the employment would have to be assumed and borne by the disabled employee or his dependents, just as, under the stat-

ute, they still must bear all beyond the scheduled compensation. Yet they have no better opportunity to foresee the casualty than the employer, and (in the judgment of the Legislature) less opportunity to make provision against it. The common law rule, requiring the employee to assume the risk, and to take account of it in advance when fixing the wages, recognized dimly that the cost of industrial accidents ought to be borne by the industry, but failed to effectuate such a purpose, partly for the very reason that the hazard could not be estimated by the individual in advance, nor the loss provided against without co-operation.

"The extension of the Compensation Law by addition of second group 45, following the recent modification of the definition of 'employee,' far from demonstrating in its application to Krinsky's case unreasonable, arbitrary action by the state through its legislative department, shows, rather, intelligent foresight, an anticipation, based upon practical experience in the operation of the law as it stood before, that, however, little foreseen by persons immediately concerned, accidental disabling injuries inevitably would occur in occupations not previously classed as hazardous, and a reasonable determination to include them in a scheme already found to be free from constitutional objection in its general application.

"We have sufficiently indicated grounds for holding that the statute, as thus extended, is not repugnant to the guaranty of 'due process of law' in the 14th Amendment. . . .

"But, it is insisted, neither *stare decisis* nor *ita lex scripta est* furnishes an adequate reply to a constitutional objection. This court sustained the New York Workmen's Compensation Law and the kindred statutes of Washington and Arizona fundamentally upon the ground of the hazardous nature of the occupations covered. If that ground is defensible at all—so runs the argument—the system must be confined to occupations actually hazardous in their nature; a legislative definition is not sufficient, nor is the occurrence of a single accident, much less one so singular and so little related to his general duty as

that which befell Krinsky, adequate proof of occupational hazard. It might occur to anybody, any day, on his way downtown to business, were he not especially careful. This is too fantastic a definition of 'inherent risk' to form the basis of a law which must conform to standards of reasonableness. And again, how can the classification resorted to in second group 45 be sustained as reasonable, within the requirements either of the 'due process of law' or the 'equal protection of the laws' provisions of the 14th Amendment? The occupation of a salesman stationed alone, far uptown in the Bronx, does not become hazardous simply because four or more porters are regularly employed at headquarters downtown in Manhattan. How can we accept the reason suggested by the Court of Appeals in the Europe case, 231 N. Y. 105, 131 N. E. 750 (somewhat at random, it should be said, and when the court, by its own confession, was not required to test its adequacy), 'that a business not ordinarily hazardous becomes such at times when manual work is done or machinery operated in connection with its main purpose'? This would be an assumption contrary to common experience—especially as applied to manual work downtown in Manhattan and the occupation of a single salesman; it might as well have been 500 clerks uptown in the Bronx. What reason is there for imposing compulsory liability upon the employer of salesmen or clerks in the Bronx simply because he finds it convenient to employ at the same time, but in separate duties, four workmen or operatives in Manhattan? He might dismiss the workmen— his neighbor and business competitor might dispense with such workmen—and thus gain immunity from the statute. Classification is permissible in legislation only when based on reasonable grounds. This peculiar grouping is classification gone wild. It cannot be sustained by the simple and obvious tests applied in *Jeffrey Mfg. Co.* v. *Blagg, supra* [235 U. S. 571, 575, 59 L. Ed. 364, 35 Sup. Ct. Rep. 167], and kindred cases.

"This, we believe, is a fair summary of the reasoning expressed or suggested in the brief and in the oral argument of plaintiff in error. We have not

minimized its force, and concede that, if it is to be taken seriously, it seems to subject second group 45, and the Compensation Law as extended by this and other recent amendments, to a test that ought to be responded to satisfactorily if the validity of the statute is to be made clear.

"Many of the propositions may be admitted—for the purpose of the argument only—as correct according to *a priori* standards, and unanswerable without resort to the tests of experience. We shall endeavor, with some care, to answer from the latter standpoint, not contenting ourselves with some rather too obvious replies already suggested.

"The New York Workmen's Compensation Law by its terms is based upon the existence of actual, not hypothetical, inherent hazards confronting employees in gainful occupations; was sustained as valid by this court upon that ground in *New York C. R. Co.* v. *White, supra* [243 U. S. 188, 208, 209, Ann. Cas. 1917D, 629, L. R. A. 1917D, 1, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247]; has been administered by the state constantly on that basis; and second group 45 shows no clear evidence of a purpose to depart from it. We leave wholly aside, as not here involved, the question whether the new group could be sustained on any other basis. Any question about the validity of an act purporting to impose compulsory liability upon employers for losses due to occupational hazards where there really are no occupational hazards may safely be left until such a case is presented.

"Next, we agree that, in a test of constitutionality under the 14th Amendment, the question whether there is inherent hazard in an occupation or a group of occupations is not to be settled conclusively by a legislative declaration or by an empty form of words. We add it is not to be settled, hardly is affected, by an arbitrary *a priori* statement, unaided by the light of experience in which the Legislature acted; that there is *absolutely no* inherent hazard in an occupation, especially where it appears that even one employee has been seriously injured while acting in the line of his duties in a manner that easily might have been anticipated by the employer, or the inspector who

supervised his work, to say nothing of the employee himself, had either of these exercised the ordinary care of the reasonably prudent man to whom the common law so frequently resorts for a standard. The Legislature, in the New York system, is justified in extending the benefits of the Compensation Law as far as it reasonably may determine occupational hazard to extend—to the 'vanishing point,' as it were —and any lines of group definition it may adopt, if easily understood and applied, cannot reasonably be called 'an empty form of words' merely because they do not carry on their face the reasons for adopting them. . . .

"Aside from this, let us suppose it was desired to extend the benefits of the law as far as practicable from the administrative standpoint; abandon the attempt to go further in grouping occupations as hazardous because of the names by which they are described, include all remaining businesses, above a fixed minimum, in a single group, treat them all as more or less hazardous, and leave questions as to the particular degree of hazard, and the proper grouping of businesses as between themselves, to be worked out by the commission in the light of experience, according to the methods of private casualty insurance companies, as already was done with the existing groups.

"Was actual inherent hazard ignored? Not at all; rather it was treated as virtually universal, but incapable of being precisely defined or classified by fixed statutory rules in advance, and more easily treated in the light of experience. The new group was to be a part of a law which operates as nearly as experience may guide, not *in vacuo,* but only where there is actual inherent hazard, and to the extent that it extends."

It will be urged, however, that the New York statute referred only to "inherent hazards of the occupation," while our statute covers "any accident arising out of and in the course of such employment."

We think the distinction is in form, and not in substance or meaning. It will be noted that under our law there are two conditions precedent to re-

covery. Not only must the accident occur "in the course of such employment," but it must also "arise out of" the employment. The only meaning which can be attributed to this last phrase is that something in the employment itself caused the accident. Now, if there be something in an employment which causes an accident, it is inevitably a risk or hazard thereof, threatening any employee who engages therein, and the word "inherent" adds nothing not already implied by the general statement. If there be no risk which "arises out of" the employment, no accident causing liability can occur, and no recovery can be had. Nor is this conclusion in conflict with our views, expressed in *Consolidated Arizona Smelting Co.* v. *Egich,* 22 Ariz. 549, 199 Pac. 134, or *Phoenix-Tempe Stone Co.* v. *Jenkins,* 28 Ariz. 291, 237 Pac. 194.

It must be remembered that, under the law as it was at the time those cases were decided, certain specified occupations were declared to be "hazardous." In all cases arising under those circumstances we used the phrase "hazardous" as referring to the named occupations, and "nonhazardous" to all others. It is obvious that this was not intended as a declaration on our part that no hazards existed in any other occupations than those named at that time by the legislature, but was merely a short and simple method of referring to the grouping made by it. And, while we might not have been as precise in our language at times as would have been advisable, yet a careful examination of these cases will show that in them the phrase "inherent hazard" was used by us to designate only those particular inherent hazards which presumably caused the legislature to pick out the named occupations and place them within the law, and we were at all times careful to point out that

the injury must be the result of a condition of the occupation. As we said in the Jenkins case:

"We readopt the opinion last above quoted as the law of Arizona. If plaintiff in this case was engaged in an occupation classified as hazardous, defendant was liable for any accident resulting from one of the conditions of the occupation, even though such condition was not one which had induced the Legislature to classify the occupation as hazardous, and which might also exist in a nonhazardous occupation."

The "conditions of the occupation" in the above quotation are the same things referred to by the court in the Krinsky case as the "inherent hazards" of the occupation, though they did not, under the old law, necessarily need to be the particular "inherent hazards" which caused the legislature to make the classification which it did then.

As was said in the Krinsky case:

"Was actual inherent hazard ignored? Not at all; rather it was treated as virtually universal, but incapable of being precisely defined or classified by fixed statutory rules in advance, and more easily treated in the light of experience; the new group was to be a part of a law which operates, as nearly as experience may guide, not *in vacuo,* but only where there is actual inherent hazard, and to the extent that it extends."

"That there was inherent hazard in Krinsky's occupation is conclusively shown by the fact that, *in the course of it,* he received a serious and disabling personal injury *arising out of it.*"   (Italics ours.)

So in our act, while the legislature did not use the words "inherent hazards of the occupation," yet it is plain that "any accident arising out of and in the course of an employment" must necessarily be caused by one of the "inherent hazards" of such occupation, as the phrase is construed by the Krinsky case.

We do not think our statute violates the 14th Amendment of the federal Constitution.

The final objection urged is that while article 18, section 8, of our Constitution, as amended, grants a right of election either to accept the Compensation Act or sue under his other constitutional rights to every employee engaged in any private employment and entitled to the benefits of the law, the act itself limits such election to employees in certain specified occupations, making it compulsory as to all others. Article 18, section 8, as amended, reads as follows:

"Section 8.  The Legislature shall enact a workmen's compensation law applicable to workmen engaged in manual or mechanical labor in all public employment whether of the state, or any political subdivision or municipality thereof as may be defined by law and in such private employments as the Legislature may prescribe by which compensation shall be required to be paid to any such workman, in case of his injury and to his dependents, as defined by law, in case of his death, by his employer, if in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its agents or employee or employees, to exercise due care, or to comply with any law affecting such employment; provided that it shall be optional with any employee engaged in any such private employment to settle for such compensation, or to retain the right to sue said employer as provided by this Constitution; and, provided further, in order to assure and make certain a just and humane compensation law in the state of Arizona, for the relief and protection of such workmen, their widows, children or dependents, as defined by law, from the burdensome, expensive, and litigious remedies for injuries to or death of such

workmen, now existing in the state of Arizona, and producing uncertain and unequal compensation therefor, such employee, engaged in such private employment, may exercise the option to settle for compensation by failing to reject the provisions of such Workmen's Compensation Law prior to the injury.''

Sections 60 and 65 of the act, so far as material to the consideration of this point, use this language:

''Section 60.    Employers who comply with the provisions of section 48 shall not be liable to respond in damages at common law or by statute, except as hereinafter provided, for injury or death of any employee wherever occurring, provided, however, that it shall be optional with employees engaged in occupations now declared by section 46 hereof to be hazardous, to accept compensation as provided for herein or to reject the provisions hereof and retain the right to sue said employer as provided by law. . . .

''All employees in hazardous occupations as defined herein shall be conclusively presumed to have elected to take compensation in accordance with the terms, conditions and provisions of this act, unless said notice in writing shall have been served by the said employee upon his employer prior to injury, as hereinbefore provided.

''Every employer of employees engaged in hazardous occupations as designated herein shall post and keep posted in a conspicuous place upon his premises, in all languages spoken by employees and available for inspection by all workmen, a notice in substantially the following form: . . .

''In the event that any employer of labor in employments designated herein as hazardous shall fail to post and keep posted said notice in accordance with the requirements hereof, or shall fail to keep on hand and available at the place where laborers are hired, the blank forms of notice herein provided for to be signed by workmen, no employee who shall thereafter engage in employment for such employer, during the time that such notices shall not be posted

or during the time that such blanks are not available, shall be deemed to have accepted the provisions of this act, and it shall be optional for such employee, if injured during said period when blanks were not available or such notice was not posted, to accept compensation hereunder or maintain other action against the employer under the laws of this state. . . ."

"Section 65.  *Right to Recover Under This Act Exclusive Remedy.  Exceptions.*—The right to recover compensation pursuant to the provisions of this act for injuries sustained by an employee, shall be the exclusive remedy against the employer, except as provided in sections 60 and 61 of this act. . . . "

A casual comparison of the quotations will show that on the face of the Constitution and the act there is indeed an irreconcilable conflict.  The Constitution says, after directing the legislature to provide a compensation act covering "such private employments as the legislature may prescribe, . . . " that:

"It shall be optional with any employee engaged in any such private employment to settle for such compensation, or to retain the right to sue said employer as provided by this constitution. . . . "

While the act in section 60 says:

"It shall be optional with employees *engaged in occupations now declared by section 46 hereof to be hazardous,* to accept compensation as provided for herein or to reject the provisions hereof and retain the right to sue said employer as provided by law. . . . "  (Italics ours.)

And that:

"The right to recover compensation pursuant to the provisions of this act for injuries sustained by an employee shall be the *exclusive* remedy against the employer, except as provided in sections 60 and 61 of this act . . . "  (Italics ours),

—and another exception not pertinent to this question.

Counsel for defendants do not deny the apparent conflict, but attempt to show that the act, in fact, takes away from the employees in the occupations not set up in section 46 nothing which the Constitution grants them. Their argument is substantially as follows:

"The amendment preserves only the right to sue 'as provided by this Constitution.' The only right of action 'provided by this Constitution,' in addition to that given by article 18, § 8, is that set up in article 18, § 7, and since this applies only to employees of the kind mentioned in section 46 of the act, no action has been taken from any one by section 65 to whom it was 'provided by the Constitution.' "

If it be true that the only constitutional actions available to an employee are those set forth in sections 7 and 8 of article 18, the point is well worth consideration. But let us see if this be true. Before the amendment in question was passed, if an employee was injured, his rights depended on whether or not he was within the classification of the statutes passed in pursuance of the mandates in sections 7 and 8 of article 18. If he was, he could either sue under one of them, or resort to an action for negligence, if in his opinion the facts justified it. *Con. Smelting Co.* v. *Ujack,* 15 Ariz. 382, 139 Pac. 465.

If, on the other hand, he did not come within such classification, he could only sue for negligence, subject to the modifications of sections 4 and 5, article 18, and, if he could not prove negligence, he was without remedy. But this last right he unquestionably had. It is contended, however, that the action of negligence is not one created by the Constitution, but a survival from the common law, modified, it is true, by certain constitutional provisions, and that it is,

therefore, not a "right to sue said employer as provided by this Constitution," and further, that it is not, and never was, a right of an employee as such, but a general right belonging to all men, regardless of their status, and therefore not within the spirit of an election given only to "employees."

It is true that the action of negligence was originally a common-law one, but its status was, in our opinion, changed when article 18, section 6, was adopted. Its language is as follows:

"Section 6.  The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

Taken into consideration with the preceding sections 4 and 5, it is beyond question that the "right of action to recover damages for injuries . . . " therein mentioned is the common-law action of negligence, and that by the prohibition against its abrogation it was taken from its status as one subject to the will of the legislature and imbedded in the Constitution, just as firmly and truly as the Compensation Act or Liability Law.  Nay, more so, for these last two had only constitutional mandates which required positive action on the part of the legislature to make them effective, while the action for negligence needed no statutory aid, and its principal incidents were placed beyond legislative control.

True, it was available under proper circumstances to others besides employees, but for these last it was a remedy available against an employer and guaranteed by the Constitution.  To hold that a right of action whose abrogation was forbidden by the Constitution can be taken away by a statute, against the will of one to whom it belonged, merely because it was not originally created by that Constitution for

his benefit exclusively, on the theory that the words "provided by this Constitution" must be read "created by this Constitution," would be contrary to every principle of construction. The common-law action of negligence, as modified by the Constitution, is now as much "provided" by that instrument for the benefit of all, be they employees or others, as are the Employers' Liability Law or the Compensation Act, for certain classes of employees, and no statute can take away the right to pursue it without granting a reasonable election to all who, on the facts, are entitled to it.

It necessarily follows that so much of the act as denies that right is obnoxious to article 18, section 8, of the Constitution, and cannot stand. Does this, however, invalidate the whole act?

It is elementary that, if part of a statute is unconstitutional, but the remainder is valid, if the valid parts are effective and enforceable of themselves, if the invalid portion was not the consideration and inducement of the whole act, and if it is to be presumed that the legislature would have passed the one without the other, the part which is constitutional will stand, while the remainder will be, rejected. 36 Cyc. 976.

Let us apply these three tests to the act in question. What must be rejected? As we have stated, the unconstitutional provision is that which takes away from certain employees in occupations coming under the act their right of election of such constitutional remedies as the facts may justify. If we strike from section 60 of the act the words "in hazardous occupations, as defined herein," and all phrases of similar import wherever they modify the word "employees," the right of election is granted on the same terms to every employee covered by the act, and the constitutional guaranty is fully preserved. The act as it re-

mains is just as effective and enforceable as before, and the first condition is complied with.

Was the provision struck out the consideration and inducement of the act as a whole? Plainly not. The inducement both of the amendment and the act, as appears on their faces, was to broaden and not to narrow the principle of compensation to injured workmen, and to provide for an election of remedies in advance of, rather than after, injury.

There remains the third condition. Would the legislature have passed the law had it known the limitation referred to was invalid? We must remember that the act is not one of the ordinary type, where the legislature of its own initiative perceives and determines the necessity of the law, and its conditions. On the contrary, it was adopted in pursuance of a definite and positive mandate from the people, inserted in the Constitution. Should we declare the entire law to be unconstitutional, on account of the invalidity of the limitation of the right of election, the constitutional mandate would still remain in force. We must presume the legislature would obey it, and the natural assumption is that it would enact precisely the law which it has already approved, eliminating only the part which the Constitution forbids. Such being the case, since the law, after striking out the invalid portions, fulfills in a singular degree the three requirements set forth above, and is in no way obnoxious to either the state or federal Constitutions, it is in all other respects of full force and effect.

The judgment of the superior court of Maricopa county is therefore affirmed.

McALISTER, C. J., and ROSS, J., concur.