IN THE SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| B.J. LOGAN and NANCY LOGAN, husband and wife, | ) ) ) | Arizona Supreme Court No. CV-01-0367-PR |
| Plaintiffs-Appellants, | ) ) ) | Court of Appeals Division One |
| v. | ) ) | No. 1 CA-CV 00-0528 |
| FOREVER LIVING PRODUCTS INTERNATIONAL, INC., ALOE VERA OF AMERICA, INC., a Texas corporation doing business as MAUGHAN RANCHES, and REX and RUTH MAUGHAN, husband and wife,[1] | ) ) ) ) ) ) ) ) | Yavapai County Superior Court No. CV 97-0748 |
| Defendant-Appellee. | ) ) ) ) ) | **O P I N I O N** |

Appeal from the Superior Court of Yavapai County

Honorable Robert M. Brutinel, Judge

**REVERSED AND REMANDED**

_____

Memorandum Decision of the Court of Appeals
Division One

**VACATED**

_____

[1] Earlier orders of the court in this case designated the defendant-appellee as Forever Living Products International, Inc. following the caption from the court of appeals. The pleadings from the parties list the defendants as "Aloe Vera of America, Inc., ("AVA") a Texas corporation, doing business as Maughan Ranches, and Rex and Ruth Maughan, husband and wife." We believe the caption noted above most accurately lists the defendants-appellees in this case.

Law Offices of William R. Hobson                    Tempe
    by   William R. Hobson
              and
Counters & Koelbel, P.C.                            Tempe
    by   Kevin Koelbel
         Lisa Counters
              and
Gil Shaw, Attorney and Counselor at Law            Yarnell
    by   Gil Shaw
Attorney for Appellants


Quarles & Brady Streich Lang                       Phoenix
    by   Robert E. Miles
         Edwin B. Wainscott
         Kevin D. Quigley
Attorneys for Appellees

**J O N E S, Chief Justice**

## Facts and Procedural History

¶1      This is a case of alleged wrongful termination. Defendants Rex and Ruth Maughan own Maughan Ranches, a Yavapai County property, leased to the Maughan's corporation, Aloe Vera of America, Inc.  The employees, plaintiffs B.J. and Nancy Logan, owners of a separate parcel of real property, maintain they were discharged by Rex Maughan for not selling their property to him at the price he demanded.  On motion by the defendants, the trial court dismissed the Logans' wrongful discharge action for failure to state a claim under the Arizona Employment Protection Act (AEPA), Ariz. Rev. Stat. Ann. (A.R.S.) § 23-1501 (1995 and Supp.

2001).  The court of appeals affirmed in a memorandum decision. This court granted review and now vacates the decision of the court of appeals and reverses the dismissal by the trial court.  We have jurisdiction based on article VI, § 5(3), of the Arizona Constitution.

¶2      When a motion to dismiss for failure to state a claim is granted, review on appeal necessarily assumes the truth of facts alleged in the complaint.  *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984); *Parks v. Macro-Dynamics, Inc.,* 121 Ariz. 517, 519, 591 P.2d 1005, 1007 (App. 1979) ("A Rule 12(b)(6) motion to dismiss for failure to state a claim, which assumes the complaint's allegations are true, attacks the legal sufficiency of the complaint") (citation omitted).  The factual allegations are summarized below.

¶3      Rex Maughan hired B.J. Logan in 1994 to work as a cowboy. He also hired Nancy Logan to work on an as-needed basis.[2]  The Logans owned a parcel of property on State Route 89 in Peeples Valley, Yavapai County.  Approximately June 19, 1996, the Planning and Zoning Board of Yavapai County granted the Logans a special use permit to develop part of their land as a "mini-storage" garage.

¶4      Rex Maughan is the sole or majority stockholder of Aloe Vera of America, Inc.  In addition to the Aloe Vera business, Rex

---

[2]The complaint does not specify the type of work she was hired to perform.

Maughan invests in real property. Ronald Walker is a real estate agent who represents Rex Maughan. Approximately August 1, 1996, Walker met with the Logans to inform them that Maughan wanted to buy the Peeples Valley property.

¶5 The Logans initially stated that they were not interested in selling, but later agreed to entertain an offer. The parties were unable to come to terms regarding a sale or trade, though the Logans offered to sell the property to Maughan for $550,000. Approximately November 11, 1996, Walker informed the Logans that Maughan rejected this offer. During that conversation, Walker allegedly threatened the Logans that they would be fired if they did not agree to sell the property to Maughan for $150,000 and that Maughan would go to the Planning and Zoning Board to ensure that the Logans would never get a permit for any commercial use of their land.

¶6 Bud Maule also worked for Maughan in a position superior to the Logans. Approximately November 27, 1996, Maule met with the Logans and again asked them if they would sell their property to Maughan at the price Maughan demanded. When they declined, they were fired effective December 1, 1996. Maule indicated that he was firing the Logans at Maughan's direction because of their refusal to sell the Peeples Valley property to Maughan and that the Logans should have anticipated Maughan's action. The issue in this case is whether the Logans now have a wrongful discharge claim against

-4-

their former employer pursuant to the provisions of the AEPA.

## Analysis

¶7      If the employees' claim is cognizable under the statute, the trial court erred in granting dismissal.  Motions to dismiss for failure to state a claim are not favored and should not be granted unless it appears that the plaintiff should be denied relief as a matter of law given the facts alleged.[3]  *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 594, 667 P.2d 1304, 1309 (1983) (citations omitted).

¶8      We begin our analysis with the statute.  We review *de novo* the interpretation of a statute.  *Arizona Dep't of Revenue v. Dougherty*, 200 Ariz. 515, 517, 29 P.3d 862, 864 ¶7 (2001).  When doing so, our foremost goal is to discern and give effect to legislative intent.  *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995).

¶9      The AEPA, which became law in 1996, allows, *inter alia*, wrongful discharge claims against employers who terminate employees in retaliation for "[t]he exercise of the right to be free from the extortion of fees or gratuities as a condition of employment as protected by § 23-202."  A.R.S. § 23-1501(3)(c)(viii).  This

---

[3] Although the wrongful discharge claim does not specifically cite the AEPA or a statute embodying public policy, it will survive a motion to dismiss if the facts as alleged demonstrate that the Logans are entitled to relief under any provable theory. *Veach v. City of Phoenix*, 102 Ariz. 195, 197, 427 P.2d 335, 337 (1967); *Mackey v. Spangler*, 81 Ariz. 113, 115, 301 P.2d 1026, 1027 (1956).

language clearly was adopted to preserve an employee's right not to be victimized by an employer's extortion. Where an employee is terminated by an employer for refusal to accept extortionate demands by the employer, in violation of A.R.S. § 23-202, the employee has a wrongful termination cause of action under the AEPA.

## A.R.S. § 23-202

¶10    A.R.S. § 23-202 makes it a class 2 misdemeanor for employers or their agents to extort money or property from employees:

> It is unlawful for a person charged or entrusted by another with the employment or continuance in employment of any workmen or laborers to demand or receive, either directly or indirectly, from a workman or laborer employed or continued in employment through his agency or under his direction or control, a fee, commission or gratuity of any kind as the price or condition of the employment of the workman or laborer, or as the price or condition of his continuance in such employment.

Prior to this case, section 23-202 had never been interpreted by an appellate court.[4] In discerning legislative intent, we look to the statute's policy, the evil it was designed to address, its words, context, subject matter, and effects and consequences. *Calvert v.*

---

[4]    We are aware of the Attorney General's opinion No. I88-010 dated January 15, 1988, in which that office opined that A.R.S. § 23-202 expressly applies to agents of the employer rather than the employer itself. 1988 WL 249593 (Ariz. A.G.). That inquiry involved the statute's application, if any, to employers requiring a minimal nonrefundable processing fee from applicants for employment. That is not the situation here. Furthermore, the Attorney General's opinion does not constitute precedent regarding statutory construction. Opinions of the Attorney General are due our respect, but are advisory and not binding. *Ruiz v. Hull*, 191 Ariz. 441, 449, 957 P.2d 984, 992 (1998).

*Farmers Ins. Co. of Arizona*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985).

¶11     By its language, section 23-202 applies specifically to persons "charged . . . with employment or continuance in employment of workmen or laborers . . . ." The person "charged" may be a foreman or a person acting as an agent of the employer, or the person may be the employer himself. For purposes of the AEPA, section 23-202's reference to agents of an employer is by no means exclusive and was not, in our judgment, intended to insulate from the reach of the AEPA employers who engage in extortionate conduct by sending their agents to extort on the employer's behalf.

¶12     The protection given to employees to be free from extortion in the workplace under section 23-202 is one of the express purposes of the AEPA. Reading the two statutes together, a proper interpretation is that an employer who by his agent or by his own action terminates an employee for refusing to be the victim of workplace extortion is subject to a wrongful termination suit.

¶13     The statute is designed to prevent employers from exacting fees, gratuities, commissions, kickbacks, or other forms of remuneration from employees as a condition of continuing employment or as a condition to obtaining employment in the first instance. On this record, the Logans were victimized by the clear equivalent of a demand for gratuities. A demand for property at a price well below its potential worth is a demand for a gratuity.

The Logans' continued employment was expressly conditioned on it.

¶14     We note further that the language of section 23-202 does not indicate to whom the fee, commission, or gratuity is ultimately to be paid. It may be destined for a foreman or agent and be actually pocketed by him. Or, as in this case, it may be claimed by the employer. Because the statute does not specify who ultimately receives the ill-gotten gain, it encompasses either scenario.

¶15     For purposes of wrongful termination claims under the AEPA, it is not necessary that an actual violation of a statute occur. *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 380, 710 P.2d 1025, 1035 (1985). In *Wagenseller*, there was no statutory violation; rather, the employee alleged she was discharged for refusing to violate a statute.

¶16     The same is true here. Accepting the facts stated in the complaint as true, the Logans refused to sell their land at less than a third of what they believed it was worth. For this, they were fired. Subsection (3)(c)(viii) of the AEPA focuses on the employer's reasons for terminating the employee and permits a wrongful termination claim where the employer terminates the employee for rejecting an extortion attempt under section 23-202. Because we find that the Logans' claim exists under the statute as

a matter of law and the motion to dismiss was improperly granted,[5] we need not reach the question, raised by our associate in a separate concurring opinion, whether a common law cause of action of the kind asserted by the Logans may still be asserted independent of the AEPA.[6]

### Conclusion

¶17      The Logans' claim of wrongful termination exists under subsection (3)(c)(viii) of the AEPA and therefore the trial court erred in dismissing it.  Accordingly, we vacate the decision of the court of appeals and reverse the judgment of the trial court.  The case is remanded to the trial court with instructions to reinstate the Logans' cause of action.

_____
Charles E. Jones
Chief Justice

---

[5] We note also that the Logans may have a claim under subsection (3)(c)(i) of the AEPA (where the employer terminates the employee for a refusal to commit an act or omission that would violate the Constitution of Arizona or the statutes of this state) based on violations of A.R.S. §§ 23-202 or 13-1804(A)(8).  Because we find that the facts of this case allow a claim to be maintained under subsection (3)(c)(viii), we need not address the possibility of a (3)(c)(i) claim.

[6] We note that the claim in *Wagenseller* would fit easily within the statutory framework of the AEPA under subsection (3)(c)(i).  *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985).

CONCURRING:

_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


_____
Nanette Warner, Judge


> NOTE:  Due to a vacancy on this court at the time this case was decided, the Honorable Nanette Warner, Judge of the Superior Court in Pima County, was designated to participate in this case under article VI, § 3 of the Arizona Constitution.



FELDMAN, Justice, specially concurring

¶18      The court today holds that the Logans may pursue a cause of action because a provision of the Arizona Employment Protection Act (AEPA) allows wrongful discharge claims against an employer who terminates an employee in retaliation for the latter's "exercise of the right to be free from . . . extortion . . . as a condition of employment . . . ."  *Ante* at ¶ 9 (quoting A.R.S. § 23-1501(3)(c)(viii) (AEPA)).

¶19      I have no quarrel with the result, but I believe the court's analysis avoids the most important issue in this case.  I write separately because I would have reached the same result by a more direct route — the one we have followed in the past.  We have

held that an "employer may fire for good cause or for no cause. He may not fire for bad cause — that which violates public policy." *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 378, 710 P.2d 1025, 1033 (1985).

¶20    Without question, the Logans' discharge violated public policy. As the court points out, Arizona law makes it a misdemeanor for an employer to extract "either directly or indirectly" a "fee . . . or gratuity of any kind" from an employee as a "condition of [the employee's] continuance in such employment." *Ante* at ¶ 10 (quoting A.R.S. § 23-202). If, therefore, we needed a statute to set public policy on this point, we have it. Thus, the Logans' discharge in violation of the state's public policy is actionable with or without the AEPA.

¶21    One would suppose, moreover, that the court would agree with the Logans' submission and simply say that retaliatory firing in these circumstances would violate the public policy of this state even if there were no AEPA. Surely the court does not require express legislation to authorize it to provide a remedy to employees fired for refusing to submit to extortion. Nor should we need a statute to provide a remedy to employees fired for returning a jury verdict with which the employer disagreed, for refusing to participate in the employer's designated religious exercise, or for reading books, newspapers, or magazines of which the employer disapproved.

-11-

**¶22**       *Wagenseller* has not been overruled,[1] and although it recognizes the power of employers to fire at-will employees with or without cause, it also teaches that our courts will provide a remedy when employers use their power in a manner contrary to public policy and thus violate the rights of their workers.  No employer should be given the power to fire, with impunity, because an employee refused to give the employer a bargain price on his home or other property or refused to paint the corporate logo on the side of his home.  *See* Ariz. Const. art. II, §§ 1 and 8, setting forth policies promulgated by the framers of our constitution.  It would be a sad day when citizens could not look to the courts to provide a remedy for such egregious wrongs.

**¶23**       Therefore, I would not duck the argument that we should apply *Wagenseller* but would simply disapprove *Johnson v. Hispanic Broadcasters of Tucson, Inc.*, 196 Ariz. 597, 2 P.3d 687 (App. 2000), insofar as it may be interpreted to conclude that common-law claims for wrongful termination are no longer cognizable.  *Id*. at 599 ¶ 4, 2 P.3d at 689 ¶ 4.  I would also disapprove *Chaboya v. American National Red Cross* insofar as it reaches the same conclusion.  72 F.Supp.2d 1081, 1092 (D.Ariz. 1999).  I would stand on what we previously said about the AEPA and terminations that

---

[1]*See Cronin v. Sheldon*, 195 Ariz. 531, 537-38 ¶ 28, 991 P.2d 231, 237-38 ¶ 28 (1999) (the "legislative preamble sets forth notions repugnant to the [state's] constitution ....").

violate public policy: the legislature may limit judicial remedies only when it creates a cause of action otherwise not cognizable in the courts, one that "originates exclusively within the statute, would not otherwise exist, and cannot trace its antecedents to a common law right of action." *Cronin v. Sheldon*, 195 Ariz. 531, 539 ¶ 39, 991 P.2d 231, 239 ¶ 39 (1999) (citing *Alabam's Freight Co. v. Hunt*, 29 Ariz. 419, 242 P. 658 (1926)). Surely we must acknowledge that the common law recognized employees' actions against employers for tort and breach of contract. That really is the only question presented in this case — whether termination for the reasons alleged by the Logans is a tort or violates the contract of employment.

¶24 I would answer that with an emphatic yes and reject the idea that we must depend on the other branches of government to permit us to open the doors of justice. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 102 S.Ct. 1148, 1154 (1982) (discussing due process protection for litigants "hoping to protect their property or . . . attempting to redress grievances."); *see also Kluger v. White*, 281 So.2d 1 (Fla. 1973); *Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973).

_____
STANLEY G. FELDMAN, Justice