2 P.3d 687

**William JOHNSON, Plaintiff/Appellant,**

v.

**HISPANIC BROADCASTERS OF TUC-SON, INC., an Arizona corporation, dba KQBN TV–14 (Telemax), KHRR TV–40 (Telemundo), and NTN TV (Nogales), Defendant/Appellee.**

No. 2 CA–CV 99–0035.

Court of Appeals of Arizona, Division 2, Department B.

Jan. 27, 2000.

Review Denied May 23, 2000.

---

Joseph L. Esposito, Tucson, Attorney for Plaintiff/Appellant.

Slutes, Sakrison, Grant, Hill & Rubin, P.C. By Mark Rubin, Tucson, Attorneys for Defendant/Appellee.

## OPINION

HOWARD, Judge.

¶ 1 Appellant William Johnson sued appellee Hispanic Broadcasters of Tucson, Inc., for wrongful termination. Hispanic Broadcasters moved for summary judgment, claiming Johnson was precluded from maintaining the action because his written employment agreement did not satisfy the requirements of A.R.S. § 23–1501. The trial court granted summary judgment for Hispanic Broadcasters, and this appeal followed. Because we agree that Johnson's employment agreement fails to satisfy § 23–1501, we affirm.

## BACKGROUND

¶ 2 We review de novo the entry of summary judgment and view the facts in the light most favorable to Johnson. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, ¶ 12 (App.1998). Johnson was living in New Mexico in February 1997, when he negotiated an employment contract with Hispanic Broadcasters. During the negotiations, Johnson demanded, and believed Hispanic Broadcasters agreed to, a one-year term commitment. Although Johnson requested a salary of $52,000 per year, Hispanic Broadcasters countered with "an annual salary of $30,000," but guaranteed Johnson would be paid at least $52,000 in the first year. In a facsimile memorandum signed by a representative of Hispanic Broadcasters and by Johnson, Hispanic Broadcasters stated in part:

> While I certainly expect you to excel and exceed our sales budgets and your potential income [sic], [Hispanic Broadcasters]

can guarantee a first year income to you of $52,000. If at the end of your twelfth month you have not earned a gross income of this amount, [Hispanic Broadcasters] will adjust your 24th paycheck to meet this guarantee.

Shortly thereafter, Johnson moved to Tucson and began to work for Hispanic Broadcasters. He was terminated in August 1997, having been paid approximately $23,000. Hispanic Broadcasters made no further payments to him.

## DISCUSSION

¶ 3 Johnson first asserts that he had a one-year employment contract, which was enforceable under common law and will support his claim, as opposed to employment at will. This argument, however, is irrelevant in light of § 23–1501, which specifically curtails most causes of action for termination of employment.[1] That section, passed by the legislature in 1996, states in relevant part:

2. The employment relationship is severable at the pleasure of either the employee or the employer unless both the employee and the employer have signed a written contract to the contrary setting forth that the employment relationship shall remain in effect for a specified duration of time or otherwise expressly restricting the right of either party to terminate the employment relationship....

3. An employee has a claim against an employer for termination of employment only if one or more of the following circumstances have occurred:

(a) The employer has terminated the employment relationship of an employee in breach of an employment contract, as set forth in paragraph 2 of this section, in which case the remedies for the breach are limited

to the remedies for a breach of contract.

¶ 4 In interpreting statutes, we attempt to ascertain and give effect to the legislature's intent. *Hale v. Amphitheater School Dist. No. 10 of Pima County,* 192 Ariz. 111, ¶ 18, 961 P.2d 1059, ¶ 18 (App. 1998). The legislature's stated intent in enacting § 23–1501 was to limit the circumstances in which a terminated employee can sue an employer to those situations involving either qualifying written contracts or an employer violating the public policy of the state as enunciated in the state constitution and statutes. 1996 Ariz. Sess. Laws, ch. 140, § 1.[2] Section 23–1501, therefore, changes our inquiry from whether the employment agreement is enforceable at common law to whether the employment agreement satisfies the statutory requirements.

¶ 5 In determining whether an employment agreement satisfies the requirements of § 23–1501, we apply common law principles of contract interpretation and attempt to determine and give effect to the parties' intent. *See Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993). In cases involving the statute of frauds, a similar context, we have upheld the admission of extrinsic evidence to interpret a contract, *Koenen v. Royal Buick Co.,* 162 Ariz. 376, 381, 783 P.2d 822, 827 (App.1989), but not to supply a required term. *Gray v. Kohlhase,* 18 Ariz.App. 368, 370–71, 502 P.2d 169, 171–72 (1972). We believe the same rules should apply here. If the employment agreement is reasonably susceptible of the interpretation Johnson suggests, extrinsic evidence is admissible to interpret its terms, *Taylor,* 175 Ariz. at 154, 854 P.2d at 1140, but not to supply a required element. *Gray.*

¶ 6 Johnson claimed below the clause in his employment contract guaranteeing him

---

1. Johnson does not challenge the validity of § 23–1501, and we express no opinion on it. *Cf. Cronin v. Sheldon,* 195 Ariz. 531, ¶ 15, 991 P.2d 231, ¶ 15 (1999) (§ 23–1501(3)(b)(i) constitutionally limits the remedies available for wrongful terminations in violation of the Arizona Civil Rights Act, A.R.S. §§ 41–1401 through 41–1493.02).

2. Although chapter 140, § 1, 1996 Ariz. Sess. Laws, is "patently unconstitutional" because it manifests the legislature's attempt to "usurp judicial authority," *Cronin v. Sheldon,* 195 Ariz. 531, ¶¶ 32, 30, 991 P.2d 231, ¶¶ 32, 30, we still consider it, solely for an indication of the legislature's intent in enacting the substantive law.

"a first year income" of $52,000 constitutes the first type of qualifying employment contract under § 23–1501(2)—one which sets forth "that the employment relationship shall remain in effect for a specified duration of time." But that clause does not comply with that section of the statute because it could be fulfilled in six months or, as Johnson concedes, "he conceivably could have [earned the $52,000] in the first month of employment." The trial court properly concluded that the guarantee clause cannot reasonably be interpreted as a qualifying written commitment for a "specified duration of time," as calculated by weeks, months, or years, because it could be fulfilled in less than one year, *see Taylor*, and extrinsic evidence was not admissible to supply this required element. *Gray*.

¶ 7 None of the four cases Johnson cites in support of his position mandates a different result. First, none involves a statute similar to § 23–1501. Second, the cases are factually and legally distinguishable. In *Hartman v. C.W. Travel*, 792 F.2d 1179, 1181 (D.C.Cir. 1986), the court concluded that a provision stating the salary "will be reviewed one year to date" could potentially support a finding that the parties intended to establish a specific term of employment. Similarly, in *Lasser v. Grunbaum Bros. Furniture Co.*, 46 Wash.2d 408, 281 P.2d 832, 833 (1955), the employment agreement included a requirement that the employee receive $1,250 per month and an additional $3,000 "[a]t the end of the year." Johnson's agreement, however, did not necessarily require any action or a bonus at the end of the year if Johnson had earned the $52,000 before that time. Furthermore, in *Ward v. Berry & Associates, Inc.*, 614 S.W.2d 372, 376 (Tenn.App.1981), and *Dallas Hotel Co. v. Lackey*, 203 S.W.2d 557, 561 (Tex.Civ.App.1947), the courts followed the presumption that hiring for certain per-year compensation raised a presumption that the employment was for that period. We do not follow that presumption. *See*

*Horizon Corporation v. Weinberg*, 23 Ariz. App. 215, 217, 531 P.2d 1153, 1155 (1975) (Absent special circumstances, employment at a specified sum per week, month, or year only creates an indefinite, not a specific, term of employment.). These cases, therefore, are not persuasive.

■ ¶ 8 Johnson contended for the first time at oral argument that the guarantee provision satisfied the statute because it guaranteed him employment until the occurrence of an event-earning $52,000. But in his response to the motion for summary judgment below and opening brief here, he argued that he was promised one year's employment, not employment until the occurrence of a specific event. And in his affidavit submitted below, Johnson did not avow that he had been promised employment until he earned $52,000, but rather, that he had been promised one year's employment. Therefore, although Johnson's supplemental brief cited cases from other jurisdictions in which employment until the occurrence of a specific event could, in some circumstances, be considered employment for a specific duration,[3] we will not consider this argument here because Johnson did not raise it below or in his opening brief and because the evidence in the record does not support it. *See Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 444, 652 P.2d 507, 517 (1982) (argument without evidentiary support and raised for first time in reply brief untimely); *State v. Arizona Property & Cas. Ins. Guar. Fund*, 192 Ariz. 390, ¶ 8 n. 4, 966 P.2d 557, ¶ 8 n. 4 (App.1998) (arguments not raised below are waived unless this court exercises its discretion to consider issue that is of general statewide importance and is a legal issue which can be resolved without additional facts).

■ ¶ 9 Johnson alternatively contends the employment agreement satisfies the second type of qualifying employment contract under § 23–1501(2)—one that "expressly restrict[s] the right of either party to terminate the employment relationship" by requiring

---

3. *See Overman v. Fluor Constructors, Inc.*, 797 F.2d 217, 219 (5th Cir.1986) (definite term of employment could include employment until end of opera or crop season, estate distributed, or construction project completed); *Aaland v. Lake Region Grain Coop.*, 511 N.W.2d 244, 246 (N.D.

1994) (employment for definite duration could include employment until plaintiff found a new job); *see also Rooney v. Tyson*, 91 N.Y.2d 685, 674 N.Y.S.2d 616, 697 N.E.2d 571, 576 (1998) (A contract " 'for as long as the boxer fights professionally' is a contract for a definite duration.").

Hispanic Broadcasters to pay him the balance of $52,000 upon his termination. The word "expressly" means "in direct or unmistakable terms[;] ... 'directly and distinctly stated; expressed, not merely implied or left to inference.'" *In re Estelle's Estate*, 122 Ariz. 109, 113, 593 P.2d 663, 667 (1979) (citation omitted), quoting *State ex rel. Ashauer v. Hostetter*, 344 Mo. 665, 127 S.W.2d 697, 699 (1939). As noted above, Johnson asserted in his affidavit submitted in opposition to Hispanic Broadcasters' motion for summary judgment that he had been given a one-year commitment, not that Hispanic Broadcasters was required to pay him the balance of $52,000 if he were terminated. His extrinsic evidence, therefore, does not support his position, and the trial court need not have considered it further. *See Taylor*, 175 Ariz. at 155, 854 P.2d at 1141. The trial court properly concluded that the agreement, even considering the extrinsic evidence Johnson offered, concerned salary and could not reasonably be interpreted as an express restriction of Hispanic Broadcasters' right to terminate the employment relationship. *See id.; Estelle's Estate.*

¶ 10 Johnson's contract fails to fulfill the requirements of § 23–1501, considering the legislature's intent in enacting it and the prior case law. Accordingly, we need not address Hispanic Broadcasters' alternative argument that Johnson's employment agreement was modified and nullified when he signed an acknowledgment that he had received Hispanic Broadcasters' handbook, which stated that his employment was "for no definite duration" and could be terminated at any time. Likewise, we need not address Johnson's claim that he is entitled to summary judgment.

¶ 11 We affirm the entry of summary judgment in favor of Hispanic Broadcasters. In our discretion, we deny its request for an award of attorney's fees pursuant to A.R.S. § 12–341.01.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, and J. WILLIAM BRAMMER, JR., Presiding Judge.