69 P.3d 1011

**Charles GALATI, Plaintiff–Appellant,**

v.

**AMERICA WEST AIRLINES, INC., an Arizona corporation, Defendant–Appellee.**

**No. 1 CA–CV 02–0170.**

Court of Appeals of Arizona, Division 1, Department D.

June 3, 2003.

Frances G. Fanning, Tempe, for Plaintiff–Appellant.

Brown & Bain, P.A., by Daniel C. Barr and Jill J. Chasson, Phoenix, for Defendant–Appellee.

## OPINION

THOMPSON, Judge.

¶ 1 Charles Galati (Galati) appeals the trial court's dismissal of his wrongful termination claim against America West Airlines, Inc. (AWA). Finding that Galati did not state a viable claim for wrongful termination, we affirm.

## BACKGROUND

¶ 2 Galati was employed by AWA as a flight attendant until he was discharged in January 1999. Galati filed suit against AWA asserting he was wrongfully terminated for being a whistleblower. Specifically, he claims AWA fired him because in November 1998 he complained about being scheduled to work without the required Federal Aviation Administration (FAA) rest breaks [1] and because he reported to the FAA that an AWA pilot removed a "MEL sticker," signaling a defect, without authority.

¶ 3 AWA filed an Arizona Rule of Civil Procedure 12(b)(6) motion to dismiss the complaint, stating that Galati had not pled a violation of Arizona statutory or constitutional law as required by Arizona's Employment Protection Act (AEPA), Arizona Revised Statutes (A.R.S.) sections 23–1501, –1502 (Supp.2001). The trial court dismissed the case, finding that Galati's action did not comply with A.R.S. § 23–1501 in that he alleged that he was terminated for bringing to light violations of federal regulations. Galati timely appealed.

---

**1.** The regulation in question is 14 C.F.R. § 121.471.

## DISCUSSION

¶ 4 Galati raises three issues:

1. Whether the Arizona Legislature in enacting the AEPA intended to exclude federal regulations from the definition of "public policy;"

2. If the legislature did intend to exclude federal regulations from the definition of public policy, whether that exclusion contravenes the Arizona Constitution; and

3. Whether the Airline Deregulation Act (ADA), 49 U.S.C. § 41713 et seq. preempts a state cause of action for wrongful discharge in violation of public policy.

We review the legal issues raised by Galati de novo and take as true all facts alleged in his complaint. *See Johnson v. McDonald,* 197 Ariz. 155, 157, ¶ 2, 3 P.3d 1075, 1077 (App.1999).

### A. Are Federal Regulations Excluded Under the AEPA's Definition of Public Policy?

■ ¶ 5 In 1996, the Arizona Legislature enacted the AEPA in response to *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985).[2] *See* Employment Protection Act Ch. 140, § 1, para. A, 1996 Ariz. Sess. Laws 683, 684. The AEPA spells out the public policy of this state[3] and enumerates the four circumstances under which an employee may bring a wrongful termination action in Arizona. *See* A.R.S. § 23–1501. One such circumstance is when an employer violates "a statute of this state" or "the public policy set forth in or arising out of the statute." A.R.S. § 23–1501(3)(b). Another is when the employer terminates an employee in retaliation

for refusing to violate Arizona law or for reporting violations of Arizona law to the employer's management or other investigative authority. A.R.S. § 23–1501(3)(c)(i), (ii).

¶ 6 Galati presents two arguments in support of his assertion that his claim for wrongful discharge is cognizable. First, under the AEPA, he asserts that firing a whistleblower who has reported violations of federal law constitutes a retaliatory termination against Arizona's public policy. Thus, he asserts that A.R.S. §§ 23–1501(3)(c)(i)(covering retaliatory firings for an employee's refusal to violate Arizona law) and(c)(ii)(covering retaliatory firings for an employee's disclosure of violations of Arizona law) apply in this case. Next, Galati asserts that his cause of action also "finds its roots in the common law." AWA asserts that the AEPA is limited to violations of Arizona law and abrogates claims of wrongful discharge based on common law.

¶ 7 In his statutory argument, Galati contends that the Arizona Legislature must have intended that Arizona public policy incorporate federal law, although he admits that the face of the AEPA appears to contemplate only the body of law promulgated under state legislative authority. The question is whether violations of federal regulations are necessarily violations of Arizona public policy under the AEPA.

■ ¶ 8 To determine whether the Arizona Legislature intended to include federal regulations in the public policy to be vindicated by the AEPA, we look first at the language of the statute itself. *See Carden v. Golden Eagle Ins. Co.,* 190 Ariz. 295, 297, 947 P.2d 869, 871 (App.1997)(stating that the best way to give effect to the legislative intent is

---

2. In *Wagenseller,* our supreme court held that an at-will employee of a hospital could bring a wrongful termination suit alleging that she was fired in violation of a public policy of this state. 147 Ariz. at 389, 710 P.2d at 1044. The court said that "an employer may fire for good cause or for no cause. He may not fire for bad cause— that which violates public policy." *Id.* at 378, 710 P.2d at 1033. The court defined public policy to include not only violations of our statutory and constitutional law, but the common law as well. *See id.* at 378–80, 710 P.2d at 1033–35. The legislature in enacting A.R.S. § 23–1501 took express exception to the court's indication

that it rather than the legislature had the authority to define public policy. *See* Employment Protection Act Ch. 140, § 1, para. A, 1996 Ariz. Sess. Laws 683, 684.

3. Under the AEPA it is the public policy of Arizona that employment relationships are contractual in nature and that, absent a contract complying with the requirements outlined in the AEPA, an employment relationship is severable at the pleasure of either party. A.R.S. § 23–1501(1), (2).

to follow the clear and unequivocal language of the statute)(citing *Lowing v. Allstate Ins. Co.,* 176 Ariz. 101, 103, 859 P.2d 724, 726 (1993)). "[T]he best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). If the language is clear, we will follow the text as written, without employing other methods of statutory construction. *State v. Riggs,* 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997).

¶ 9 The language chosen by our legislature is unequivocal. Section 23–1501(3)(b) provides a remedy if "[t]he employer has terminated the employment relationship of an employee in violation of *a statute of this state.*" (Emphasis added). Section 23–1501(3)(c)(i) provides a remedy if the employee is terminated in retaliation for refusing to commit an act or omission *"that would violate the Constitution of Arizona or the statutes of this state."* (Emphasis added). Section 23–1501(3)(c)(ii) provides a remedy if the employee is terminated for disclosing to the employer, its representative, or an investigatory body a violation of *"the Constitution of Arizona or the statutes of this state."* (Emphasis added). No mention is made of any federal provision, statute or regulation. As Galati acknowledges, the language plainly appears to contemplate only transgressions of Arizona law as violative of Arizona public policy.

¶ 10 Due to the express and unequivocal language of the statute, we need not inquire further to divine the legislature's intent on this matter.[4] *See UNUM Life Ins. Co. of Am., v. Craig,* 200 Ariz. 327, 329–30, ¶¶ 11–

12, 26 P.3d 510, 512–13 (2001)("The primary aim of statutory construction is to find and give effect to legislative intent."). If the statute is clear we will "generally apply it without using other means of construction." *Id.* at 330, ¶ 12, 26 P.3d at 513. The statute reiterates that it is against violations of the Arizona Constitution and Arizona statutes that protection is provided.

¶ 11 In support of his claim that federal regulations should be included under the umbrella of public policy, Galati cites *Wagenseller,* 147 Ariz. 370, 710 P.2d 1025; *Wagner v. City of Globe,* 150 Ariz. 82, 722 P.2d 250 (1986); and *Cummins v. Mold-in Graphic Systems,* 200 Ariz. 335, 26 P.3d 518 (App. 2001), *depublished,* 201 Ariz. 474, 38 P.3d 12 (2002).

¶ 12 As mentioned previously, the AEPA was enacted in direct response to *Wagenseller* and with the intent of limiting the availability of wrongful termination for the violation of public policy.[5] Nevertheless, *Wagenseller* was a case which would have been cognizable under the AEPA had it existed at that time. *See Logan v. Forever Living Prods. Int'l., Inc.,* 203 Ariz. 191, n. 6, ¶ 16, 52 P.3d 760, n. 6 (2002).

¶ 13 *Wagner* was decided in 1986 and well before the enactment of the AEPA. In *Wagner,* the plaintiff alleged that he was discharged from his job as a policeman after he blew the whistle about a man illegally charged with violating a void statute on vagrancy and in violation of personnel regulations. 150 Ariz. at 84, 722 P.2d at 252. It is clear that Wagner, like Wagenseller, would have been able to pursue both his claims

---

**4.** Not that divining the legislature's intent here would have been difficult given that the preamble states that the AEPA was intended to narrow the availability of wrongful termination claims. *See* Employment Protection Act Ch. 140, § 1, para. A, 1996 Ariz. Sess. Laws 683, 684.; *see also Johnson v. Hispanic Broadcasters of Tucson, Inc.,* 196 Ariz. 597, 599, ¶ 4, 2 P.3d 687, 689 (App. 2000)("the legislature's stated intent ... was to limit the circumstances in which a terminated employee can sue an employer to those situations involving either qualifying written contracts or an employer violating the public policy of the state as enunciated in the state constitution and statutes"). This intent can be seen not only in the above cited provisions but also in the fact

that our legislature also acted to prohibit wrongful termination claims based on public policy when *other statutes of this state,* for example civil rights statutes, provide their own remedy. *See* A.R.S. § 23–1501(3)(b).

**5.** This court recently declined to recognize the availability of common law wrongful termination claims in light of the AEPA. *See Johnson,* 196 Ariz. 597, 2 P.3d 687 (declining to find a common law action for wrongful termination when the alleged employment contract did not conform to A.R.S. § 23–1501(2)). We address Galati's asserted common law claim below.

under the current version of the AEPA and without relying on the common law.[6]

¶ 14 *Cummins*, like *Wagner* and *Wagenseller*, was a common law action not brought under the AEPA, and has been depublished by order of the Arizona Supreme Court. *See Cummins*, 201 Ariz. 474, 38 P.3d 12. Thus, *Cummins* has no precedential value on any issue, including our determination whether a violation of federal regulations could support a wrongful termination.

¶ 15 After a review of the clear and unequivocal language of A.R.S. § 23–1501 and the cases cited by Galati, we do not find that a statutory public policy exception exists for whistleblowing associated with federal regulations.

### B. The Legislature Did Not Violate the Arizona Constitution By Excluding Federal Regulations From Public Policy Under the AEPA

■ ¶ 16 Galati asserts that the Arizona Legislature cannot have excluded federal regulations from the AEPA without violating the supremacy and the separation of powers clauses of the Arizona Constitution.

¶ 17 Our supreme court addressed the constitutionality of the AEPA in *Cronin v. Sheldon*, 195 Ariz. 531, 991 P.2d 231 (1999)(holding that employees asserting wrongful termination claims against their employers for violating the Arizona Civil Rights Act (ACRA) were limited under the AEPA to the ACRA's statutory remedies). The court in *Cronin* found that the AEPA does not violate the equal privileges clause, the impairment of contract clause, the anti-abrogation clause, the non-limitation clause or the separation of powers clause.[7] *Cronin*, therefore, resolves Galati's separation of powers argument whether the legislature

could enact the AEPA and regulate remedies under it.

¶ 18 Whether a common law tort for wrongful termination still exists after the AEPA is an open and much debated question in Arizona law. We need not reach that question because of our determination of the preemption issue, to which we now turn.

### C. The Airline Deregulation Act Preempts a State Cause of Action for Wrongful Discharge

■ ¶ 19 AWA asserts the federal ADA preempts Galati's state claims and, to that end, cites *Botz v. Omni Air International*, 286 F.3d 488 (8th Cir.2002). The ADA states:

> [A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier....

49 U.S.C. § 41713(b)(1) (1994).

¶ 20 *Botz*, like Galati, was a flight attendant who objected to a schedule that she believed violated FAA regulations on flight time. *See* 286 F.3d at 490. The Eighth Circuit Court of Appeals rejected *Botz*'s state claim for wrongful termination in violation of Minnesota's whistleblower statute on the basis of preemption. *Id.* at 498; *see* Minn.Stat. § 181.932 (prohibiting discharge of employee for refusing employer's order to violate any "state or federal law or rule or regulation").[8]

¶ 21 The airline in *Botz* argued that *Botz*'s claims were unmistakably preempted under a recent addition to the ADA called the Whistleblower Protection Program (WPP).[9] 286 F.3d at 490–92. The airline also argued that these same claims were always preempted by the ADA itself, which was enacted in 1978.

---

6. *Wagner could also have relied on* A.R.S. § 38–532(A)(1)(2001) which makes it a prohibited personnel practice to discharge a public employee in retaliation for that employee's disclosure of a "violation of any law."

7. The court in *Cronin* did find that the preamble violated the separation of powers clause by "usurp[ing] judicial authority" to determine the law. *Id.* at 538, ¶¶ 30–31, 991 P.2d at 238.

8. Notably, the Minnesota statute in *Botz* is written significantly more broadly than Arizona's AEPA. The Minnesota statute includes whistleblowing for violations of "any law." Minn.Stat. § 181.932.

9. The WPP applies to fiscal years beginning after September 30, 1999. *See* Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub.L. No. 106–181, § 3, 114 Stat. 61, 64 (2000) (codified as 49 U.S.C. § 106 (2003)).

*Id.* The circuit court recognized that the United States Supreme Court had directed an expansive view of the preemption provision of the ADA in *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). 286 F.3d at 494.

¶ 22 The circuit court in *Botz* persuasively identified the impacts that conduct protected by the whistleblower statute would have on airline service, focusing in particular on the circumstance that a flight attendant's refusal of an assignment would jeopardize "an air carrier's ability to complete its scheduled flights." 286 F.3d at 494. Because federal regulations specify the minimum number of flight attendants required, an employee's refusal of an assignment could ground a scheduled flight. *Id.* The court concluded that the "authorization to refuse assignments, and the protections that the whistleblower statute provides, have a forbidden connection with an air carrier's service under any reasonable interpretation of Congress's use of the word 'service.'" *Id.* at 495.

¶ 23 In the same way, if Arizona law protected Galati's refusal of the assignment made by his employer, it would contravene the ADA's preemption of state laws relating to airline service. As the *Botz* court stated, "the plain language of the ADA's pre-emption provision" precludes such a claim. *Id.* at 498.

¶ 24 As we have noted, the *Botz* court cited a pre-WPP case, *Morales,* in support of its broad interpretation of the scope and application of the ADA's preemption provision. 286 F.3d at 493–95 (noting *inter alia* that a state law may impermissibly relate to air-carrier service even if not specifically designed to do so). The court also noted the prohibition of a state's attempt to impose its own public policy on an air carrier's operations as declared in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). 286 F.3d at 494. In *Wolens,* the United States Supreme Court acknowledged that the statute in question,

relating to consumer fraud, had general applicability and did not target airline operations, but was nonetheless preempted by the ADA. 513 U.S. at 227–28, 115 S.Ct. 817. The court held that the ADA's purpose is "to leave largely to the airlines themselves, and not at all to the States, ... the furnishing of air transportation services." *Id.* at 228, 115 S.Ct. 817. The states may not regulate, in the guise of statutes of general applicability such as those providing whistleblower protection, the provision of transportation services by airlines.

¶ 25 In support of his claims that the ADA is not preempted, Galati cites *Air Transport Ass'n of America v. San Francisco,* 266 F.3d 1064 (9th Cir.2001)(finding no preemption when airlines brought action against the city challenging validity of ordinance requiring city to contract only with companies that did not discriminate between employee's spouses and domestic partners in respect to travel benefits) and *Aloha Islandair Inc. v. Tseu,* 128 F.3d 1301 (9th Cir.1997)(finding no preemption when airline sought declaratory and injunctive relief to prohibit the Hawaii Civil Rights Commission from enforcing state disability discrimination laws against airline with respect to a monocular pilot applicant). *Air Transport* and *Aloha,* both dealing with local or state anti-discrimination provisions that had no more than a peripheral relation to the provision of airline services, do not detract from the force of the preemption analysis presented in *Botz,* which we deem persuasive.

¶ 26 Since our supremacy clause requires that Arizona not act when preempted by federal law, we can take no further action here. *See Fain Land & Cattle Co., v. Hassell,* 163 Ariz. 587, 594, 790 P.2d 242, 249 (1990); *Hernandez–Gomez v. Volkswagen of Am., Inc.,* 201 Ariz. 141, 142, ¶ 3, 32 P.3d 424, 425 (App.2001). We note that the WPP now provides its own statutory remedy for claims such as that of Galati. *See* 49 U.S.C. § 42121(b)(3)(B).[10]

---

**10.** It also appears that Galati had a remedy under the Railway Labor Act, 45 U.S.C. § 151 et seq. The Act provides, *inter alia,* a statutory scheme for resolving employer-employee disputes arising in the airline industry. *See* Paul J.

Zech, Federal Pre-emption and State Executive Remedy Issues in Employment Litigation, 72 N.D. L. Rev. 325, 333 (1996). Galati brought a claim under the Railway Labor Act, but it was dismissed as untimely.

¶ 27 Because we find that the ADA preempts Galati's attempt to bring a state cause of action either under the AEPA or Arizona's common law, we affirm the trial court.

### D. Attorneys' Fees on Appeal

¶ 28 Galati's request for an award of fees on appeal pursuant to A.R.S. § 12–341.01 and *Wagenseller* is denied.

### CONCLUSION

¶ 29 For the above stated reasons, we affirm the trial court.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, SUSAN A. EHRLICH, Judge.