IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DEBORAH HARPER; TRACEY EVERITT; MICHELLE PARKER; JANA
LEINEWEBER; and JANET SABOL, *Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, *Defendant/Appellee*.

No. 1 CA-CV 15-0519
FILED 12-27-2016

---

Appeal from the Superior Court in Maricopa County
No.  CV2015-002273
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Ann Hobart
*Counsel for Defendant/Appellee*


Broening Oberg Woods & Wilson PC, Phoenix
By Terrence P. Woods and Brian Holohan
*Counsel for Plaintiffs/Appellants*

_____

**OPINION**

Presiding Judge Andrew W. Gould delivered the opinion of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

_____

**G O U L D**, Judge:

¶1        Deborah Harper, Tracey Everitt, Michelle Parker, Jana Leineweber, and Janet Sabol ("Plaintiffs") appeal the superior court's order dismissing their wrongful termination claims against the State. Because Plaintiffs failed to state a cognizable claim for wrongful termination, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Plaintiffs were employees of Child Protective Services ("CPS"), a department of the Division of Children, Youth and Families of the Arizona Department of Economic Security. At the time of their termination, Plaintiffs held the following postions: Harper was employed as a program administrator, Everitt was a program manager, Parker served as policy program manager, and Leineweber and Sabol worked as assistant program managers.

¶3        In 2011, CPS had a backlog of "unassigned" reports involving child abuse and neglect. CPS assembled a team that included Plaintiffs to review and dispose of the backlog.

¶4        CPS directed Plaintiffs to develop a protocol to dispose of unassigned reports. This protocol included designating some of the reports as "NI," or not investigated. Once a report was designated "NI," it was considered resolved. According to Plaintiffs, they were directed to use the "NI" designation by their superiors.

¶5        When the public learned that CPS was using the "NI" designation to dispose of child abuse/neglect reports, there was a firestorm of bad press and negative public backlash. The Department of Public Safety investigated the use of the "NI" designation and issued a report. Then, in April 2014, Plaintiffs were terminated by the then-Director of the Division of Child Safety and Family.

**¶6**        Plaintiffs filed this complaint for wrongful termination. The State filed a motion to dismiss the complaint, arguing that Plaintiffs had failed to allege a viable wrongful termination claim. The superior court granted the State's motion, and Plaintiffs appealed.

## DISCUSSION

I.    Standard of Review

**¶7**        Plaintiffs claim the superior court erroneously dismissed their complaint under Arizona Rule of Civil Procedure 12(b)(6). We review the legal issues raised de novo and take as true all well-pleaded facts alleged in the complaint. *Galati v. America West Airlines, Inc.*, 205 Ariz. 290, 292, ¶ 4 (App. 2003); *see also Logan v. Forever Living Products Int'l, Inc.*, 203 Ariz. 191, 192, ¶ 2 (2002) (stating that 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint).

II.    Plaintiff's Statutory Claims

**¶8**        In Arizona, employment relationships are "at-will." At-will employment means that the employer-employee relationship can be terminated "at the pleasure of either party, whether with or without cause." *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 381 (1985). However, an at-will employee may not to be fired for "bad cause." *Id.*, at 381. Our supreme court has defined bad cause as a termination violating "public policy" as "articulated by constitutional, statutory, or decisional law." *Id*.

**¶9**        Approximately ten years after *Wagenseller* was decided, the legislature passed the Employment Protection Act ("EPA"). Arizona Revised Statutes ("A.R.S.") § 23-1501 (West 2016). The EPA provides that employment relationships are severable "at will" unless specifically contracted otherwise, and sets out the limited circumstances in which an employee can bring a wrongful termination action in Arizona. A.R.S. § 23-1501(A); *Galati*, 205 Ariz. at 292, ¶ 5; *see also Johnson v. Hispanic Broadcasters of Tucson, Inc.*, 196 Ariz. 597, 599, ¶ 4 (App. 2000) (stating that the legislature's intent in enacting the EPA was to limit the circumstances in which a terminated employee can sue).

**¶10**        Like *Wagenseller*, the EPA recognizes a claim for wrongful termination when "the discharge violate[s] a statute of this state" or violates public policy as "set forth in or arising out of [a] statute." *See* A.R.S. § 23-1501(A)(3)(b); *see also Taylor v. Graham Cty. Chamber of Commerce*, 201 Ariz. 184, 188, ¶ 11 (App. 2001). Under the EPA, it is not necessary that an actual violation of a statute occur; a discharge for refusing to violate a statute or

the relevant public policy underlying a statute may also give rise to a wrongful termination claim. *Logan*, 203 Ariz. at 194, ¶ 15; *see also Galati*, 205 Ariz. at 292, ¶ 5 (stating that wrongful termination claim exists when employee is discharged "for refusing to violate Arizona law or for reporting violations of Arizona law").

**¶11** Plaintiffs argue they were discharged in violation of public policy as set forth in A.R.S. § 41-742(B)(4) (West 2016). This statute lists one of the general "principles" underlying the Arizona State Personnel System: public employees who are adequately performing their jobs should be retained. Based on this statute, Plaintiffs assert it was against public policy to terminate them because they were competently performing their jobs.

**¶12** At bottom, Plaintiffs argue the protections afforded to "covered" employees should be extended to them. Under Arizona's State Personnel System, an employer must establish specific grounds, or "cause," to terminate a "covered" employee. *See* A.R.S. §§ 41-745, -773, -781, -782. This protection applies to all "covered" employees who are competently performing their job duties.

**¶13** However, Plaintiffs are not covered employees. Plaintiffs never alleged, nor have they argued in their briefs, they were covered employees. To the contrary, Plaintiffs were employed as supervisors, and therefore designated as "uncovered" employees under the State Personnel System. *See* A.R.S. § 41-742(A)(2)(b) (stating that supervisors are "uncovered" employees); A.R.S. § 41-741(19) (defining supervisory employees).[1] Thus, as uncovered employees, Plaintiffs are at-will employees, and do not enjoy the protections provided to covered employees under the State Personnel System.

**¶14** A.R.S. § 41-742(B)(4) does not confer any additional rights on Plaintiffs. Indeed, A.R.S. § 41-742(G) expressly states that the provisions contained in "this article . . . do not confer any rights in excess of, or in addition to, those previously authorized to any state employee." *See also*

---

[1] The State Personnel System's definitions concerning covered and uncovered employees apply to Plaintiffs' wrongful termination claims. *Taylor*, 201 Ariz. at 188, ¶ 13. The EPA directs that "[a]ll definitions and restrictions contained in the [underlying] statute also apply to any civil action based on a violation of the public policy arising out of the statute." A.R.S. § 23-1501(A)(3)(b).

A.R.S. § 41-742(H) (stating that "[t]his article does not create or confer any contractual employment right for any employee").

**¶15** Accordingly, there was no violation of A.R.S. § 41-742 or its public policy in Plaintiffs' discharges, and Plaintiffs have no claim under the EPA based on § 41-742. *See Taylor*, 201 Ariz. at 188-89, ¶¶ 14-16 (holding that because plaintiff had no actionable, direct claim under the Arizona Civil Rights Act, she could not base her claim for wrongful termination on a violation of the Act).

**¶16** Plaintiffs next claim their terminations violated the public policy set forth in A.R.S. § 38-443 (West 2016). Under this statute, it is a class 2 misdemeanor for a person holding a position of public trust or employment to knowingly fail to perform a duty "which is required of him by law." *Id.* Here, Plaintiffs assert that because they were directed by their superiors to use the "NI" designation, if they had disobeyed that direction, they would have been guilty of violating A.R.S. § 38-443.

**¶17** Plaintiffs' argument fails. No law required CPS, Plaintiffs or their supervisors to designate abuse and neglect reports as "NI." As a result, Plaintiffs would not have violated A.R.S. § 38-443 by refusing to apply the "NI" designation, because the supervisor's orders to use the "NI" designation did not have the force of law.

III.    Plaintiffs' Common Law Claims

**¶18** Having found no statutory basis for their wrongful termination claims, Plaintiffs urge us to look to the common law. Specifically, Plaintiffs argue that we should recognize, as a matter of public policy, that state at-will employees may not be terminated by a public official for the purpose of providing the official political cover for a policy or decision that results in bad press or negative public opinion.

**¶19** To be clear, Plaintiffs are asking this court to set aside the restrictions of the EPA and create, out of whole cloth, a new common law right protecting at-will employees against such politically expedient discharges. Plaintiffs cite no common law authority providing such a protection to employees. Indeed, we have found no case in Arizona or any other state providing such protection. *Cf. Mack v McDonnell Douglas Helicopter Co.*, 179 Ariz. 627, 630 (App. 1994) (refusing to find "an employer has a non-contractual duty of fairness to an employee and that a breach of such duty is actionable negligence").

¶20        To pave the way for the creation of this new right, Plaintiffs urge us to set aside the EPA as unconstitutional.  Thus, Plaintiffs contend that to the extent the EPA constrains us from taking this course, it violates the separation of powers and the anti-abrogation clause.  *See* Ariz. Const., art. 3 (three branches of government; separation of powers); *Cronin v. Sheldon*, 195 Ariz. 531, 537-38, ¶¶ 26-32 (1999) (stating courts have the constitutional authority to "develop, modify, or expand the common law" as well as "participate in the development of public policy"); *see also* Ariz. Const., art. 18, § 6  (anti-abrogation clause); *Lerner v. DMB Realty, LLC*, 234 Ariz. 397, 406, ¶ 36 (App. 2014) (stating that anti-abrogation clause prevents abrogation of all common law actions for negligence, intentional torts, strict liability, defamation, and other tort actions that trace their origins to the common law at the time the Arizona Constitution was adopted).

¶21        We do not, however, reach the question of whether the restrictions in the EPA are constitutional because even if the EPA had never been passed, there is no cognizable basis for Plaintiffs' novel claim.  As we have stated before, "[w]e address the constitutionality of a statute only when circumstances require us to do so," and we adhere to that principle in this case.  *Lerner*, 234 Ariz. at 401, ¶ 11; *see Cronin*, 195 Ariz. at 542, ¶ 54 ("[A] person who is not injured by an unconstitutional provision of a statute may not raise an objection as to its constitutionality."); *see also United States v. Locke*, 471 U.S. 84, 92 (1985) (stating it is a "cardinal principle" that a court will not pass on the constitutionality of a statute where "some other nonconstitutional ground [is] fairly available by which the constitutional question can be avoided"); *Ashwander v. TVA*, 297 U.S. 288, 345-48 (1936) (Brandeis, J., concurring) (stating a court will not anticipate a question of constitutional law in advance of the necessity of deciding it).

## CONCLUSION

**¶22** The superior court's order dismissing Plaintiffs' complaint is affirmed.

