IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WORLDWIDE JET CHARTER, INC., *Plaintiff/Appellee*,

*v.*

TIMOTHY R. CHRISTIAN, *Defendant/Appellant*.

No. 1 CA-CV 22-0158
FILED 3-9-2023

Appeal from the Superior Court in Maricopa County
No.  CV2019-096623
The Honorable Stephen M. Hopkins, Judge *Retired*
The Honorable Tracey Westerhausen, Judge

**AFFIRMED**

COUNSEL

Denton Peterson Dunn, PLLC, Mesa
By Brad A. Denton, Larry A. Dunn
*Counsel for Plaintiff/Appellee*

Vasin & Rocco, PLLC, Mesa
By Mitchell A. Vasin
*Counsel for Defendant/Appellant*

**OPINION**

Judge Cynthia J. Bailey delivered the opinion of the Court, in which
Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass
joined.

**B A I L E Y**, Judge:

¶1   Timothy R. Christian appeals the superior court's summary judgment for Worldwide Jet Charter, Inc. ("Worldwide") on Worldwide's claim for breach of contract and Christian's counterclaim for breach of the implied covenant of good faith and fair dealing. Christian argues the court erred in concluding his counterclaim was superseded by the Arizona Employment Protection Act ("AEPA"), *see* Ariz. Rev. Stat. ("A.R.S.") §§ 23-1501, -1502, and that he failed to satisfy the statutory preconditions to assert constructive discharge under the AEPA. Because Christian has shown no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2   Worldwide provides charter jet services and offered to hire Christian as a pilot. In October 2018, the parties signed a Conditional Offer of Employment ("Offer") that incorporated two attached exhibits: a Promissory Note ("Note") and a Training Reimbursement Agreement ("TRA").[1]

¶3   As outlined in the Offer, Christian's employment was contingent upon his completing required flight training. Although Christian was financially responsible for his flight training costs, the Offer stated that Worldwide would advance the training costs consistent with the terms in the Note and TRA. The Offer and Note provided for payments over approximately two years, but Worldwide agreed to credit Christian with these payments if he remained employed with Worldwide. If Christian's employment ended sooner than two years, however, he would become responsible for any balance due on the Note. And, if Christian did not successfully complete the training or terminated his employment with Worldwide within three months after completing the training, he was responsible for the entire training cost.

¶4   Christian accepted the Offer and signed an employment contract ("Contract") that included the terms in the Offer. Christian completed flight training in December 2018 and resigned from Worldwide less than two months later. Worldwide sent Christian a demand letter for

---

[1]   In a recent opinion involving Worldwide and other defendants subject to the same or substantially similar documents, this court has held that the Offer incorporates the Note and TRA, constituting one employment agreement. *Worldwide Jet Charter, Inc. v. Toulatos*, 85 Ariz. Cases Digest 7, 523 P.3d 398, 402–03, ¶ 14 (App. 2022). We agree with that conclusion.

training cost reimbursement. Christian did not repay the training costs, responding that he had been wrongfully constructively discharged and damaged by Worldwide, which had "forced him to fly a Gulfstream G4 notwithstanding its unairworthy status."

¶5 Worldwide sued Christian, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment based on Christian's failure to repay the training costs. Christian pled no clear affirmative defense, but counterclaimed, asserting Worldwide breached the implied covenant of good faith and fair dealing by requiring him to fly an unsafe aircraft and therefore had "compelled" him to terminate his employment.[2] *See* Ariz. R. Civ. P. 8(d). He further asserted the training he received was so he could fly the Gulfstream G4, and the G4 rating had no value to him outside of his contract with Worldwide.

¶6 Worldwide moved for summary judgment on its breach of contract claim and Christian's counterclaim. Worldwide argued the court should dismiss the counterclaim and grant summary judgment in its favor because (1) the counterclaim was really a common law claim for constructive discharge that was superseded by § 23-1502 of the AEPA, (2) even if Christian had properly asserted a constructive discharge claim under A.R.S. § 23-1502, he failed to satisfy the statutory preconditions to assert constructive discharge, (3) even if Christian properly asserted a common law contract claim, it failed because the undisputed facts showed the plane was certified as airworthy, and (4) Christian had breached his contract with Worldwide. After responsive briefing, the superior court held oral argument and took the matter under advisement.

¶7 The court later granted Worldwide's motion. The court determined that Christian's counterclaim was superseded by the AEPA and failed under A.R.S. § 23-1502 and, alternatively, that Christian had failed to present admissible evidence raising issues of material fact regarding the Gulfstream G4's airworthiness and whether Worldwide threatened to fire anyone who refused to fly even if the plane was unsafe. After denying Christian's motion for reconsideration, the court issued a final judgment in favor of Worldwide. *See* Ariz. R. Civ. P. 54(c).

---

[2] The counterclaim alleged that Worldwide knowingly breached an implied obligation to provide airworthy aircraft to fly and that breach compelled Christian to either quit or engage in illegal conduct (flying an unairworthy aircraft) that risked an end to his flying career, was contrary to public policy, and constituted "a tortious, bad-faith breach of contract."

**¶8**          We have jurisdiction over Christian's timely appeal.  *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶9**          Christian argues the superior court erred in granting summary judgment for Worldwide.

### I.          Standard of Review

**¶10**          We review *de novo* the superior court's grant of summary judgment, construing the facts and reasonable inferences in the light most favorable to Christian, the opposing party.  *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002).  We also review *de novo* other questions of law, including the interpretation of statutes and contracts.  *See Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 194, ¶ 6 (2016); *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009).  We review for abuse of discretion the superior court's denial of a motion for reconsideration.  *Powers v. Guar. RV, Inc.*, 229 Ariz. 555, 561, ¶ 24 (App. 2012) (citation omitted).

**¶11**          Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a); *accord Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990).  It is inappropriate "if the court must evaluate the credibility of witnesses with different versions of material facts, weigh the quality of evidence, or choose among competing inferences."  *Purdy as Tr. ex rel. Survivors of Jones v. Metcalf ex rel. Pima Cnty.*, 252 Ariz. 270, 274, ¶ 14 (App. 2021) (citing *Orme Sch.*, 166 Ariz. at 311).

### II.          Worldwide's Breach of Contract Claim

**¶12**          On the record presented, it is undisputed that Christian agreed to the employment terms with Worldwide and executed the Contract.  Under the Contract, Worldwide advanced more than $40,000 for Christian's training with the understanding that if he stopped working for Worldwide within three months of his effective hire/start date, he would be required to repay the full amount.  Because Christian does not dispute the enforceability of the Contract, that he resigned less than two months after his start date, or the amount Worldwide claimed he owed, the superior court did not err in granting summary judgment to Worldwide on its breach of contract claim if Christian's counterclaim fails.

4

III.    Christian's Counterclaim

A. Christian's Common Law Counterclaim is Superseded by A.R.S. § 23-1502(A).

**¶13**        In Arizona, the AEPA governs the severability of employment relationships. *See White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1061 (D. Ariz. 2009) (citing *Cronin v. Sheldon*, 195 Ariz. 531 (1999); *Taylor v. Graham Cnty. Chamber of Com.*, 201 Ariz. 184 (App. 2001)).  By the AEPA's plain language, A.R.S. § 23-1501 addresses employees' claims against an employer when the employer terminates the employment relationship, and § 23-1502 addresses employees' claims against an employer when constructive discharge occurs—i.e., when the employee is allegedly compelled to terminate the employment relationship.

**¶14**        The AEPA does not affect all state common-law claims that might arise in the workplace. *See Cronin*, 195 Ariz. at 538, ¶ 35; *Taylor*, 201 Ariz. at 187, ¶ 8.  But wrongful termination and constructive discharge claims are governed exclusively by the AEPA. *See* A.R.S. §§ 23-1501(A)(3) ("An employee has a claim against an employer for termination of employment only if one or more of the following circumstances have occurred . . . ."), -1502(A) ("In any action under the statutes of this state or under common law, constructive discharge may only be established by [A.R.S. § 23-1502(A)(1)-(2)]."), (F); *White*, 664 F. Supp. 2d at 1061 ("[T]he [A]EPA not only applies to White's breach of contract claim, but governs it exclusively."); *cf. Taylor*, 201 Ariz. at 191, ¶ 25 ("[T]he [A]EPA's primary purpose [i]s to circumscribe, not broaden, wrongful termination claims based on alleged violations of public policy."); *see also Cronin*, 195 Ariz. at 535, ¶ 15 (upholding the constitutionality of challenged provisions of the AEPA).[3]

**¶15**        Here, the superior court properly relied on Christian's opposition to Worldwide's summary judgment motion, characterizing his counterclaim as a claim for constructive discharge, in concluding the counterclaim is superseded and governed exclusively by A.R.S. § 23-1502(A).  Christian argues his counterclaim should be construed more broadly and is based on bad faith "conduct other than termination" of his employment relationship with Worldwide.  Even if Christian did not waive this permutation of his argument by not raising it in the superior court, *see*

---

[3]        In this appeal, the parties do not present, and we do not reach, any constitutional issues that might arise when a statute alters common law claims.

*BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 594, ¶ 25 (App. 2021), we find it unavailing, *see Cook v. Scottsdale Ins. Co.*, No. CV11-0938-PHX-DGC, 2012 WL 6089039, at *9 (D. Ariz. Dec. 6, 2012) ("This Court previously has held that an Arizona plaintiff does not have a common law claim for wrongful termination if the claim is based on the same conduct as the AEPA claim." (citing *Revit v. First Advantage Tax Consulting Serv., LLC*, No. CV10–1653–PHX–DGC, 2012 WL 1230841, at *8 (D. Ariz. Apr. 12, 2012))); *see also White*, 664 F. Supp. 2d at 1061 (similar).

¶16        In *Revit*, the federal district court explained the rationale for the limitations the AEPA placed on independent common law claims:

> The Arizona Supreme Court recognized in *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (Ariz. 1985), that an employer may be held liable for civil damages if the employer discharges an employee for a reason that is against the public policy of Arizona. "[T]he AEPA was enacted in direct response to *Wagenseller* and with the intent of limiting the availability of wrongful termination for the violation of public policy." *Galati* [*v. Am. W. Airlines, Inc.*, 205 Ariz. 290, 293, ¶ 12 (App. 2003)]. Whatever categories of wrongful termination might survive under *Wagenseller* after enactment of the AEPA—an issue that has not been decided by Arizona courts—this Court cannot conclude that they include actions for the same conduct covered by the AEPA. To so hold would mean that any strictures placed by the AEPA on claims arising from particular conduct could simply be disregarded by repackaging the claims under *Wagenseller*. Such an interpretation would have absolutely no limiting effect on *Wagenseller*, and therefore would be clearly contrary to the intent of the AEPA.

No. CV10–1653–PHX–DGC, at *8.

¶17        Christian's counterclaim is, in substance, a constructive discharge claim governed by the AEPA, *see* A.R.S. § 23-1502(A), and he does not assert a common law claim based on any conduct independent from the AEPA. Moreover, A.R.S § 23-1502(A) expressly provides that constructive discharge claims—including those made "under common law"—must be brought under the AEPA. Christian points to no applicable Arizona statutory or public policy exception that could make his counterclaim independent from his AEPA claim.

> B. Christian Has Waived Any Argument That His Counterclaim Should Be Considered Under A.R.S. § 23-1501(A)(3)(a).

**¶18**        Christian next argues his counterclaim should be considered a "valid and recognized contract cause of action" under A.R.S. § 23-1501(A)(3)(a).  Christian admittedly did not plead a claim under § 23-1501(A)(3)(a).  Accordingly, he has waived this argument. *See, e.g., Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007).  Section 23-1501(A)(3)(a) does not apply here, and Christian has no cause of action under that statute.

**¶19**        Worldwide also notes that Christian did not specifically cite § 23-1502 when pleading his counterclaim, and it argues he may be deemed to have waived any argument based on that statute as well.  The superior court found no waiver, however, and addressed his counterclaim under § 23-1502.  So do we.

> C. Christian's Counterclaim Fails Under A.R.S. § 23-1502(A)(1) Because He Did Not Satisfy the Precondition Requirements Under A.R.S. § 23-1502(B).

**¶20**        Under A.R.S. § 23-1502(A), constructive discharge may *only* be established by showing (1) objectively difficult or unpleasant working conditions or (2) the employer's outrageous conduct, either of which would cause a reasonable employee to feel compelled to resign.  As a precondition for an employee to bring a constructive discharge claim under subsection (A)(1), an employee must take the following actions before resigning:

> 1. Notify an appropriate representative of the employer, in writing, that a working condition exists that the employee believes is objectively so difficult or unpleasant that the employee feels compelled to resign or intends to resign.
>
> 2. Allow the employer fifteen calendar days to respond in writing to the matters presented in the employee's written communication under paragraph 1 of this subsection.
>
> 3. Read and consider the employer's response to the employee's written communication under paragraph 1 of this subsection.

A.R.S. § 23-1502(B).

¶21 Christian did not provide the written notice required by A.R.S. § 23-1502(B). On appeal, he has not asserted that Worldwide waived the precondition requirement by failing to comply with the employer's notice requirement of A.R.S. § 23-1502(E). And the undisputed record is to the contrary. Worldwide provided evidence that it posted the required § 23-1502(E) notice, and it attached three declarations stating that Christian did not provide notice to Worldwide under § 23-1502(B). Christian's own declaration was silent on the topic. Accordingly, Christian did not satisfy the precondition requirements for a claim under A.R.S. § 23-1502(A)(1).

### D. Christian's Counterclaim Also Fails Under A.R.S. § 23-1502(A)(2) and (F).

¶22 Christian argues that he should be excused from compliance with the preconditions of § 23-1502(B) because Worldwide's conduct was so egregious—forcing pilots to break the law or be fired—that the claim falls under A.R.S. § 23-1502(A)(2) and (F). Under A.R.S. § 23-1502(F),

> an employee may bring a constructive discharge claim without prior written notice in the event of outrageous conduct by the employer or by a managing agent of the employer including sexual assault, threats of violence directed at the employee, a continuous pattern of discriminatory harassment by the employer or by a managing agent of the employer or other conduct if the conduct would cause a reasonable employee to feel compelled to resign.

¶23 The superior court concluded that Christian's counterclaim "does not fit within that statute," and we agree. Christian focused his counterclaim on Worldwide's alleged failure to provide an airworthy aircraft, but Christian's declaration does not contradict the undisputed facts that show Worldwide responded to the report regarding the G4's standby altitude indicator by complying with all federal regulations governing such situations. On this record, Christian did not show Worldwide engaged in outrageous conduct as a matter of law, and the superior court did not err in granting summary judgment as to Christian's counterclaim.[4]

### IV. Attorneys' Fees and Costs on Appeal

¶24 Both sides request attorneys' fees on appeal. Because Worldwide is the prevailing party, we award attorneys' fees to Worldwide

---

[4] Given our resolution of the previous issues, we need not address the additional issues raised by the parties.

consistent with the parties' agreement and A.R.S. § 12-341.01 and taxable costs under A.R.S. § 12-342 upon compliance with Rule 21, ARCAP.

**CONCLUSION**

¶25     We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA